LEON A. CANNIZZARO, JR., Judge.
This case involves a dispute regarding a partition of community property. The trial court resolved the dispute in favor of the plaintiff, Phyllis Seales, and against the defendant, Louis B. Reuther. Mr. Reuther is now appealing the trial court’s decision.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
After twenty-five years of marriage, Mr. Reuther and Ms. Seales were divorced. The reason for their divorce was unusual. Mr. Reuther decided to divorce his wife, because he feared that his children from a prior marriage were going to have him declared incompetent and take control of his property. Therefore, Mr. Reuther and Ms. Seales lived apart for the requisite amount of time necessary to obtain a divorce, and then they were divorced. Immediately after the divorce, Mr. Reuther and Ms. Seales resumed living together just as they had during their married life.
A partition agreement was confected, and the community property was divided. Mr. Reuther gave Ms. Seales full title to the family home, where they still 1 dived together, and the remainder of the community assets was divided. Mr. Reuther wanted Ms. Seales to have more than one-half of the community property. Therefore, Mr. Reuther’s attorney and Ms. Sea-les’ attorney wanted to make certain that in his attempt to benefit Ms. Seales, Mr. *164 Reuther did not cause the agreement to be lesionary.[1]
Approximately three years after Mr. Reuther and Ms. Seales were divorced, Mr. Reuther went to visit his children. While he was visiting his children, his children had him interdicted[2], and he was placed in a nursing home. Mr. Reuther’s daughter was appointed to be his curatrix.
After Mr. Reuther was interdicted, his daughter, in her capacity as his curatrix, filed suit to have the partition agreement rescinded on the grounds that it was le-sionary. The suit was dismissed on an exception of res judicata.
Approximately a year later, Ms. Seales filed the instant suit seeking to amend the partition agreement to describe more clearly certain assets that were owed by State Farm Insurance to Mr. Reuther. He had worked as an insurance agent for State Farm for a number of years both during and prior to his marriage to Ms. Seales. Certain of these assets had been assigned to Ms. Seales in the partition agreement. After a trial on the merits, the trial court amended the agreement to specify exactly what benefits payable by State Farm were to be allocated to Mr. Reuter and to Ms. Seales, respectively. A prior assignment of the State Farm labenefits that was executed by Mr. Reuther was declared null and void, Ms. Seales was awarded $63,011.58 that she was owed under the terms of the partition agreement, as it was amended by the trial court, and Mr. Reuther was ordered to pay the costs of the proceedings. Mr. Reuther, through his curatrix, is appealing the trial court judgment.
DISCUSSION
Mr. Reuther has raised four issues on appeal. He claims that the instant suit is barred by the doctrine of res judicata. He also claims that the trial court improperly applied the law relating to the construction of contracts and that, alternatively, even if the partition agreement were ambiguous, the trial court did not carry out the intent of the parties. Finally, he claims that he should not have been required to pay the costs of the proceeding.
Assignment of Error No. 1: The district court erred in denying plaintiffs exception of res judicata.
A few months after Mr. Reuther’s daughter was appointed to serve as his curatrix, she filed a petition on his behalf to rescind the partition agreement on the basis of lesion. Ms. Seales filed an exception of res judicata in that case, and the exception was granted. The court found that the homologation of the partition agreement in a court proceeding, in which all of the parties had the right to oppose the approval of the partition agreement, had served to adjudicate the issue of lesion and that the doctrine of res judicata prevented the court from revisiting that issue. Mr. Reuther now argues that the same reasoning that applied in the suit to rescind the partition agreement should apply here.
In the instant case the partition agreement contained a binding, contractual obligation on the part of both parties requiring them to take corrective action in the Revent that the property that was partitioned was “insufficiently or incorrectly described.” In such a case the parties agreed “to execute, immediately when called upon to do so, without demanding *165 any additional consideration, such amenda-tory acts as may be necessary or required to vest title in the appropriate party.”
The evidence in the record reflects that neither the parties to the partition agreement nor their attorneys correctly understood the retirement compensation plan that State Farm provided for Mr. Reuther. As a result of this misunderstanding, the language in the partition agreement was ambiguous and did not partition the compensation to which Mr. Reuther was actually entitled. The property was, therefore, “insufficiently or incorrectly described.” Ms. Seales now seeks to have the partition agreement reformed to reflect what she contends was the intent of the parties at the time the agreement was confected. Based on the foregoing, we find that the exception of res judicata does not apply to the facts in this case. Therefore, the trial court properly denied the exception. Assignment of Error No. 2: The district court erred in applying the law relating to the construction of contracts in that the provisions of the contract were not ambiguous and could be given effect.
The relevant provisions of the partition agreement provided that Mr. Reuther shall have ownership of the following:
(1) Full interest in and to the State Farm Pension Plan for the first forty-eight (48) months of payments pursuant to the plan.
(2) One-half interest in and to the State-Farm Pension Plan to take effect forty-eight (48) months from the date of the first payment to LOUIS B. REUTHER. After forty-eight (48) months, the parties shall share equally in any and all benefits derived from this plan. This provision does not include any proceeds from the State Farm Termination Benefit Bonus, which is payable to LOUIS B. REUTHER over a sixty(60) month period. The provisions of this transfer will be effected by [sic] qualified domestic relations order.
| s(3) Full interest in the State Farm Termination Benefit Bonus, which is payable to LOUIS B. REUTHER over a 60-month period.
Ms. Seales argues that State Farm does not have a pension plan as such. Instead, included in the written agreement that established Mr. Reuther’s business relationship with State Farm were two compensation provisions that resembled pension plans. She argues that the partition agreement was ambiguous, because it referred to a “State Farm Pension Plan”. She, therefore, further argues that the agreement should be reformed to reflect the intent of the parties in confecting the agreement.
Mr. Reuther and State Farm had entered into an agreement establishing the terms and conditions of their relationship.[3] The agreement provided for three types of compensation that are relevant in the instant case. These three types of compensation are described below.

Length of Service Payments

The first type of compensation was designated as the length of service payments. These payments were called the “State Farm Termination Benefit Bonus” in the partition agreement and are described in section (3) quoted above.[4] The State *166 Farm Termination Benefit Bonus, which the agreement with State Farm referred to as the “length of service payments”, was offered by State Farm in 1995 to its agents who were at least sixty-five years old at the time and who retired that year. This bonus was payable in sixty monthly installments. Mr. Reuther retired in | fi1995, and was entitled to the bonus. Mr. Reuther and Ms. Seales agree that the partition agreement allocated the entire State Farm Termination Benefit Bonus to Mr. Reuther.

Termination Payments

The second type of compensation was designated as the termination payments, and they were payable upon the termination of the relationship between an agent and State Farm. These payments were not specifically described in the partition agreement, but, in Mr. Reuther’s case, these payments were payable upon his retirement. Under the terms of the agreement between State Farm and its agents, if an agent had at least two years of service as a State Farm agent, if the agent returned to State Farm any property belonging to it, and if the agent refrained from soliciting or selling insurance coverage to State Farm policyholders for a period of twelve months after the agent and State Farm terminated their relationship, the agent would receive these payments for sixty months.

Extended Termination Payments

The third type of compensation was designated as the extended termination payments, and they were payable after all of the termination payments had been paid. These payments were not expressly described in the partition agreement, but they were payable to Mr. Reuther five years after his retirement. Under the terms of the agreement between State Farm and its agents, the extended termination payments were payable upon the termination of the agent’s relationship with State Farm, if the agent were at least sixty-five years old and had at least twenty years of service as a State Farm agent with the last ten of those years being continuous. The extended termination payments began the sixty-first month following the 17termination of Mr. Reuther’s relationship with State Farm and will continue until his death.

Ambiguity in the Type of Payments Described in the Partition Agreement

Reading the provisions of the State Farm agreement and the provisions of the partition agreement, we find that the partition agreement was ambiguous in describing the payments to which Ms. Seales was entitled. There is clearly no “State Farm Pension Plan” as was described in the partition agreement. The State Farm agreement, however, does provide for compensation to be paid to retired agents. There are two components of the compensation package that is paid to these agents. The first component begins immediately after retirement and consists of sixty months of termination payments as described above.[5] The second component begins after the termination payments end. This component consists of the ex *167 tended termination payments that are described above and lasts until the agent dies.
Based on the testimony of the attorneys who represented Ms. Seales and Mr. Reuther, respectively, in connection with the confection of the partition agreement, it is clear that the parties contemplated a pension plan that would consist of a continuous stream of payments beginning when Mr. Reuther retired and ending when he died. The partition agreement provided that for the first forty-eight | smonths after Mr. Reuther retired, he would be entitled to the entire amount of these payments. Beginning with the forty-ninth month, he would be entitled to one-half of the monthly pension payments, and Ms. Seales would be entitled to the other one-half. Because there is no “State Farm Pension Plan” as described in the partition agreement, the provisions of the partition agreement that refer to the pension plan are ambiguous.

Intent of the Parties

La. C.C. art. 2045 provides that the common intent of the parties should be the basis for interpreting a contract. When the words of a contract, however, are clear and do not lead to absurd consequences, “no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. Additionally, doubtful provisions in contracts must be interpreted “in light of the nature of the contract, equity, usages, [and] the conduct of the parties before and after the formation of the contract....” La. C.C. art. 2053. Finally, “[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.” La. C.C. art. 2056. This Court must use these guidelines to determine what Mr. Reuther’s and Ms. Seales’ intent was when they executed the partition agreement.
Assignment of Error No. 3: In the alternative, if the provisions of the contract were ambiguous, the court did not carry out the intent of the parties.
If the termination payments are not considered to be part of the State Farm retirement benefits, Ms. Seales would not be entitled to receive any retirement payments paid by State Farm until one hundred and eight months, or nine years, after Mr. Reuther retired. Mr. Reuther, represented by his curatrix, argues that this was the intent of the parties when the partition agreement was executed.
|9If the termination payments and the extended termination payments were intended by the parties to be considered as two, separate “retirement plans” under the terms of the partition agreement, Ms. Sea-les would be entitled to one-half of the termination payments made during the forty-ninth through the sixtieth month of such payments. Then she would be entitled to one-half of the extended termination payments beginning the forty-ninth month that they are payable. This would mean that Ms. Seales would receive one year of retirement payments four years after Mr. Reuther’s retirement. Then she would not receive any retirement payments for another four-year period, after which she would receive one-half of the monthly extended termination payments. Alternatively, if the termination payments were intended by the parties to be excluded from the retirement benefits, Ms. Sea-les would receive no retirement payments for the first nine years after Mr. Reuther’s retirement.
Ms. Seales, however, contends that the parties were not aware that the retirement payments from State Farm consisted of two types of payments, to be paid consecutively rather than concurrently. She contends that the parties intended that Mr. Reuther should receive the first forty-eight *168 months of retirement payments from State Farm and that thereafter she and Mr. Reuther would each receive one-half of any retirement payments made by State Farm.[6]
The evidence in this case indicates that the attorney who represented Mr. Reuther in connection with the preparation and execution of the partition agreement spoke with a representative of State Farm when the agreement was being negotiated. The attorney sought to obtain the information necessary to |indetermine what payments from State Farm should be allocated to Mr. Reuther alone and what payments should be shared by both Mr. Reuter and Ms. Seales. The attorney who represented Ms. Seales in connection with the partition agreement testified that he probably was given a specimen copy of the agreement that existed between Mr. Reuther and State Farm but that he did not read the agreement. Mr. Reuther’s attorney supplied either the contract language purporting to divide all payments owed by State Farm between Mr. Reuther and Ms. Sea-les or the terms to be used in referring to the various types of payments.
The attorney who represented Mr. Reuther in connection with the partition agreement testified that he wanted to make certain that the agreement was not lesionary, because Mr. Reuther wanted to give Ms. Seales complete ownership of the family home. He testified as follows in his deposition, which was introduced in evidence at the trial:
Understand that Mr. Reuther wanted to give the form [sic] to Mrs. Reuther. This isn’t exactly an exact exchange. If you’re shooting for why isn’t there a 50/50 [it]is because Mr. Reuther wanted to give Mrs. Reuther the things he wanted to give her. It was only my job to make sure that he didn’t give Mrs. Reuther too much.
He further testified in his deposition that he and Ms. Seales’ attorney were “very careful at [sic] lesion with this partition.”
Clearly, Mr. Reuther’s intent was to be extremely generous with his ex-wife in the partition agreement. Finally, the attorney testified that he had discussed the “State Farm Pension Plan” at length with Mr. Reuther and that Mr. Reuther did not intend for Ms. Seales to wait nine years after his retirement to begin receiving a portion of the retirement benefits from State Farm. Both the attorney who represented Mr. Reuther and the attorney who represented Ms. Seales were very |T1adamant that Mr. Reuther did not intend for Ms. Seales to wait nine years before receiving one-half of his retirement benefits.
Mr. Reuther argues that because Ms. Seales did not object to an assignment prepared by State Farm and signed by Mr. Reuther, she should now be foreclosed from contesting the allocation of the “State Farm Pension Plan” in the partition agreement. Mr. Reuther argues that the assignment clarifies the meaning of the term “State Farm Pension Plan”. The assignment prepared by State Farm provided that Ms. Seales would receive one-half of the extended termination payments payable to Mr.Reuther by State Farm beginning the forty-ninth month that such payments were made. Additionally, the assignment specifically provided that Ms. Seales would not receive any of the termination benefits payable to Mr. Reuther for the first sixty months after he closed his State Farm agency.
*169 We do not agree that the assignment precluded Ms. Seales from contesting the provisions of the partition agreement. The assignment ,was an agreement executed by Mr. Reuther and accepted by State Farm. Ms. Seales did not sign the assignment, her attorney testified that he probably received it and just put it in his files rather than sending it to her, and the assignment was confected after, not before, the partition agreement was executed. State Farm had no authority to bind Ms. Seales to an agreement she did not intend to make, and Mr. Reuther had no authority to unilaterally modify the partition agreement by the execution of the assignment. Because the assignment does not reflect the intent of the parties, the trial court correctly determined that it was without effect.
Based on the unrefuted testimony of the attorneys who represented Mr. Reuther and Ms. Seales, respectively, in connection with the execution of the partition agreement, we find that the interpretation of the partition agreement urged |12by Ms. Seales reflects the intent of the parties at the time the partition agreement was executed. Further, because Mr. Reuther’s attorney either drafted the provisions of the partition agreement relating to the payments Mr. Reuther would receive from State Farm or supplied the terms to be used in the provisions, any ambiguity in those provisions must be construed against Mr. Reuther. La. C.C. art. 2056.
We have reviewed the judgment by the trial court. We find that it reforms the partition agreement to reflect the clear intent of the parties to the agreement.
Assignment of Error No. 4: Mr. Reuther should not have been cast with the costs of this proceeding.
La. C.C.P. art. 1920 provides that “[u]nless the judgment provides otherwise, costs shall be paid by the party cast....” Additionally, article 1920 provides that “[ejxcept as otherwise provided by law, the court may render judgment for costs ... against any party, as it may consider equitable.” In this case, we do not find that the trial court judge in any way abused her discretion in assessing costs against Mr. Reuther. This is particularly true in light of the fact that Mr. Reuther failed to “execute immediately, when called upon to do so,” as required by the partition agreement, the amendatory acts required to vest title to the incorrectly described “State Farm Pension Plan” in the appropriate party.
CONCLUSION
We find no error in the judgment of the trial court. That judgment is hereby affirmed in its entirety.
AFFIRMED.

. La. C.C. art. 2589 provides that "[t]he sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable.”

. There is evidence that Mr. Reuther had very mild dementia at the time of his divorce from Ms. Seales, and he was later diagnosed with Alzheimer's Disease.

. We note that the record does not contain an actual copy of the agreement between Mr.Reuther and State Farm. Instead, the record contains a "Specimen Agreement”.

. A copy of the agreement pursuant to which Mr. Reuther was to receive these payments is not in the record, but both parties refer to the payments in their pleadings and briefs and agree that the payments are owed solely to Mr. Reuther.

. These payments may be paid to agents of any age who terminate their relationship with State Farm after at least two years of service and who comply with the other requirements for receiving termination payments. The termination payments, however, may be considered as part of the retirement compensation for those agents who retire after the age of sixty-five and have been State Farm agents for the requisite number of years necessary to receive extended termination payments. Otherwise, a retired agent who had worked for State Farm the required number of years to receive the extended termination payments would receive no actual "retirement” payments until five years after retirement when the extended termination payments became payable.

. Ms. Seales does not claim any part of the State Farm Termination Benefit Bonus or any part of the renewal commissions payable to Mr. Reuther, because these two types of payments are expressly reserved to Mr. Reuther in the partition agreement.