JAMES L. CANNELLA, Judge.
[ gSylvia Goodman Walker appeals from the trial court ruling in favor of her former husband, Donald R. Walker, on three issues involving the interpretation of the consent agreement and addendum thereto, partitioning the parties’ community property. For the reasons which follow, we reverse in part, affirm in part and remand.
The parties stipulated to the facts and documents involved in this dispute. The parties were married on January 1, 1970 and divorced on July 11, 1989. On May 12, 1989, prior to the divorce, the parties entered into an agreement providing for alimony for Mrs. Walker and the partition of their community property. On June 9, 1989, the parties executed an addendum to the prior agreement, as pertinent here, placing a cap on the alimony obligation once Mr. Walker “commenee[s] receiving retirement benefits.” The issue here is interpretation of those four words.
lsOn October 30, 1996, Mrs. Walker submitted two Qualified Domestic Relations Orders (QDRO) to the trial court, which were signed when there was no timely objection by Mr. Walker. On July 7, 1999, Mr. Walker filed a petition to set aside the QDROs. On August 30, 2000, upon consent of both parties, the QDROs were set aside. A new QDRO was entered October 4, 2001, providing that Mrs. Walker is to receive 32.5 percent of Mr. Walker’s retirement benefits from Union Carbide Corporation (Union Carbide). In March of 2001, Mr. Walker withdrew retirement funds that had been deposited in a fund at Union Carbide pursuant to a company plan.[1]
On July 7, 2003, when Mrs. Walker discovered that Mr. Walker had withdrawn the retirement funds, she filed a rule for return of her portion of the retirement funds, coupled with two other issues concerning the designation of her as survivor beneficiary of the retirement plan and beneficiary of his life insurance policy with Union Carbide. The parties agreed to submit the matter on stipulated facts and exhibits.
Following a hearing on January 22, 2004, the trial court took the matter under advisement. On March 2, 2005, judgment was rendered in favor of Mr. Walker on all three issues. It is from this judgment that Mrs. Walker appeals. On appeal she assigns three errors: (1) that the trial court erred in holding that she was not entitled to a portion of the accrued retirement benefits that Mr. Walker withdrew; (2) that the trial court erred in holding that she was not entitled to be designated as the surviving spouse on Mr. Walker’s retirement plan; and (3) that the trial court erred in holding that Mr. Walker had the right to change beneficiaries on his life insurance plan with Union Carbide.

laACCRUED RETIREMENT BENEFITS AND ALIMONY

The original community property partition agreement provided in pertinent part:
*470 1. Permanent Alimony in the exact amount of Three Hundred Dollars per month, commencing June 1, 1989, for a period of sixty (60) months, and thereafter at the rate of FIFTEEN PERCENT (15%) of DONALD RAY WALKER’S gross monthly income from any and all sources of earned income from employment' that he receives, to be calculated on a monthly basis and payable to SYLVIA GOODMAN WALKER each and every month, said fifteen percent (15%) of DONALD RAY WALKER’S gross income due and payable on the 1st of each month of the month following when said gross income was earned, said fifteen per cent (15%) of his gross income to be deducted and paid directly to SYLVIA GOODMAN WALKER.
It was further provided that the alimony was to continue for the life of Mrs. Walker.
The June 9,1989 addendum to the above agreement altered the alimony award, limiting Mrs. Walker’s entitlement as follows:
1. The alimony obligation set out in paragraph 1. of the agreement shall continue to be paid by Donald Ray Walker to Sylvia Goodman Walker for the remainder of her life, or until Donald Ray Walker shall commence receiving retirement benefits from his employment at Union Carbide Corporation, which ever occurs sooner. Upon commencement of payments under the Union Carbide Retirement Plan, Sylvia Goodman Walker shall be entitled to fifteen (15%) percent of any other earned income received by Donald Ray Walker until Donald Ray Walker reaches age 62, at which time the fifteen (15%) percent obligation shall cease. It is expressly understood by the parties that the total monthly amount to be received by Sylvia Goodman Walker, whether from retirement income or employers other that Union Carbide Corporation shall not exceed fifteen (15%) percent of the salary which Donald Ray Walker would have received from Union Carbide Corporation, prior to age 62.
As found by the trial court, when reading the original agreement together with the addendum, we find that the alimony obligation was divided into three | ¡^separate periods. The first period was a 60 month period from June 1, 1989 until May 31, 1994, during which Mrs. Walker was to receive $300 per month. The second period was from June 1, 1994, until Mr. Walker “commenced] receiving retirement benefits” from Union Carbide, during which time the alimony obligation was as provided in the original agreement, 15% of Mr. Walker’s “gross monthly income from any and all sources of earned income from employment that he receives.” The third period was from the time Mr. Walker commences receiving retirement benefits until he reached the age of 62, at which time all alimony obligations would terminate. During this last period Mrs. Walker’s alimony entitlement was further limited by the proviso that “the total monthly amount to be received by Sylvia Goodman Walker, whether from retirement income or employers other than Union Carbide Corporation shall not exceed fifteen (15%) percent of the salary which Donald Ray Walker would have received from Union Carbide Corporation prior to age 62.”
The facts stipulated to and found by the trial court indicate that Mr. Walker effected a form of “retirement” on May 1, 1999 at age 58, whereby receipt of retirement benefits was deferred and they accrued in Mr. Walker’s favor in a Union Carbide account.[2] At the conclusion of a 22 month *471 period, on March 1, 2001, Mr. Walker withdrew the total amount of accrued funds, $59,149.10. Thus, as expressly found by the trial judge, Mr. Walker “commenced receiving retirement benefits on March 1, 2001.” It also appears from the record that Mr. Walker continued working at Union Carbide until May of 2000. The exhibits stipulated to by the parties provide, by a letter from the payroll department, that 15% of Mr. Walker’s salary was garnished through April of 2000. The spread sheet and check stubs also corroborate that. The record further indicates that Mrs. |fiWalker was paid $789 per month (or most of the months) during the 22 month period.
Mrs. Walker contends that she is due her 32.5% share of the pension funds withdrawn by Mr. Walker in March 2001, $19,223.45 (32.5% of $59,149.10). The trial judge agreed that she was due her share, of the retirement funds, but found that Mn Walker had already paid her most of what was due by making his customary alimony payment of $789. •
The trial judge reached this conclusion based on his interpretation of the community property agreement and addendum, concluding that the limiting provisions of the addendum took effect when Mr. Walker “effectively” retired, May 1, 1999. Following that, Mrs. Walker’s alimony and retirement award combined was limited to no more than 15% of Mr. Walker’s salary that he would have received prior to age 62. This was stipulated to be $789 per month. Mrs. Walker was due $835.80 per month as her portion of the retirement funds. Thus, the trial court reasoned that, since Mrs. Walker was paid $789 per month during this period, she was owed only a minor additional amount. We disagree.
The agreement between the parties is in the nature of a contract. In interpreting the provisions of the agreement, general,rules of contract interpretation apply. Reuther v. Seales, 03-1220 (La.App. 4th Cir.2/18/04), 869 So.2d 162. La. C.C. art. 2045 provides that the common intent of the parties should be the basis for interpreting a contract. However, when the words of a contract are clear and do not lead to absurd consequences, “no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046.
In this case, we find the wording of the alimony provisions, in what was titled a Community Property Partition and Addendum, very clear on the point in question. The addendum states that paragraph 1 of the original agreement 1 ./(entitling Mrs. Walker to $300 for 60 months and then 15% of Mr. Walker’s gross monthly income from any and all sources of earned income from employment) will continue for the remainder of her life or until Mr. Walker “commenee[s] receiving retirement benefits ... whichever occurs sooner.” The trial judge found in his reasons for judgment, and it is not disputed, that Mr. Walker “commenced receiving retirement benefits on March 1, 2001.” Based- on the record, we make the same finding, that Mr. Walker commenced receiving retirement benefits when he received a lump sum check from Union Carbide for $59,149.10. Prior to that, he had not “received” any retirement benefits* although they accrued in a company fund from May 1, 1999 until he received them on March 1, 2001.
We find that the trial court erred by misinterpreting the alimony agreement and finding that the limiting provision was activated by Mr. Walker’s “effective” retirement which triggered the “commencement of (retirement) payments” by Union Carbide. The problem with that finding is that it is at odds with the clear wording of the addendum to the alimony agreement. As stated above, the agreement between the parties clearly and expressly states *472 that the operative act which reduces the alimony obligation is when Mr. Walker “commence^] receiving retirement benefits” and not when Union Carbide starts accruing them in an account for Mr. Walker, as was held by the trial court. Had the parties intended the latter triggering event, that is, when retirement benefits commence accruing, they could have so provided. Instead thé language is clearly otherwise and receipt of the benefits is the triggering event.
Moreover, we find this interpretation consistent with the overall alimony plan. As found by the trial judge, the intent of the parties was to provide Mrs. Walker with a continuous stream of income. In the original agreement, after receiving a set sum ($300) for 60 months, Mrs. Walker was to receive 15% of Mr. |sWalker’s gross earned income without limitation. Then, in apparent recognition of the fact that, after Mr. Walker retired and commenced receiving retirement benefits, his income would decrease and, simultaneously, Mrs. Walker would commence receiving funds from her portion of the pension funds, they added by addendum a limitation to the original provision, which took effect when Mr. Walker “commencefe] receiving retirement benefits” and/or when he reached age 62. Neither of those triggering events occurred prior to March 1, 2001.
To hold otherwise, would be completely at odds with the intent of the parties in providing Mrs. Walker with a steady flow of income. If the event that limits Mrs. Walker’s alimony, as found by the trial judge, was the day the company commenced accruing pension benefits for Mr. Walker, then Mr. Walker would be able to choose to defer receipt of his retirement benefits, as he did, even though he continued to work, during which time he would not have to pay Mrs. Walker anything. Ultimately, which in this ease was 22 months later, Mrs. Walker would receive her share of the pension funds. However, Mrs. Walker, who is handicapped, would be left in the interim in the difficult, if not impossible situation, of being without steady income for a 22 month period. The trial judge found that it was the intent of the parties to provide Mrs. Walker with steady income. The parties’ intent is only fostered by interpreting the agreement literally as written with the limiting provisions taking effect only when pension benefits are received and Mrs. Walker is ensured of the steady income as intended.
Therefore, we conclude that the trial court erred in finding that the limiting clause of the addendum was triggered on May 1, 1999 rather than on March 1, 2001, when Mr. Walker “commence[d] receiving retirement benefits”. Mrs. Walker was entitled to her share of the retirement benefits (32.5%) as well as the agreed to alimony (15% of Mr. Walker’s gross earned income). Because of the | flerroneous trial court ruling, complete information concerning Mr. Walker’s gross earned income was not included.[3] Thus, the case must be remanded to the trial court for further proceedings to determine in accord with this opinion the amount of alimony and pension benefits due Mrs. Walker.

DESIGNATION OF RETIREMENT BENEFICIARY

Mrs. Walker contends that the parties agreed that Mrs. Walker would be the designated surviving spouse for purposes of the beneficiary designation in Mr. Walk *473 er’s retirement plan with Union Carbide. The pertinent language found in the partition agreement provides:
Donald Ray Walker further agrees to pay to Sylvia Goodman Walker one-half of all of his retirement and pension benefits from Union Carbide Corporation vested prior to June 1, 1989, when due and payable to Donald Ray Walker, and Donald Ray Walker further agrees to execute and sign a wage or income assignment order and any and all other necessary documents Sylvia Goodman Walker may request or require to facilitate the direct payment to Sylvia Goodman Walker of her one-half share of Donald Ray Walker’s retirement and pension benefits on a monthly basis due and payable on the 1st of each month from Union Carbide. Donald Ray Walker agrees to execute a surviving spouse option designation with Union Carbide Corporation in favor of Sylvia Goodman Walker in connection with said assignment.
Mrs. Walker also references language in the original QDRO in support of her argument. The QDRO provided:
The alternate Payee has and is hereby designated as the surviving spouse of the Participant under the terms of the Plan. If the Alternate Payee survives the Participant, the Alternate Payee shall receive such survivor benefits in accordance with the terms and conditions of the retirement.
ImOn April 6, 1999, Mr. Walker changed the beneficiary designation of his retirement plan to his current wife. Mrs. Walker argued that the change was in violation of the partition agreement and that she was entitled to have Mr. Walker ordered to change the beneficiary designation to her name. The trial court disagreed and ruled that there was nothing in the partition agreement that mandated that she be named the surviving beneficiary designee and that Mr. Walker was free to change that designee. We agree.
The last sentence in the applicable paragraph of the partition agreement is the only one that speaks to the surviving spouse designation for the retirement plan and it is qualified by the phrase, “in connection with this assignment.” The assignment referred to was a wage or income assignment to facilitate direct payments to Mrs. Walker of her share of the pension benefits. Reference to the surviving spouse designee was limited to effecting the assignment and nothing more. We find no language in the agreement directing that Mr. Walker must name Mrs. Walker as the surviving spouse beneficiary of his retirement plan and that he cannot change that beneficiary. We find no error in the trial court ruling on this issue denying Mrs. Walker’s request to have Mr. Walker name her as the surviving spouse beneficiary of his retirement plan.

DESIGNATION OF LIFE INSURANCE BENEFICIARY

Mrs. Walker contends that under the partition agreement the parties had agreed that Mrs. Walker would be named as the designated beneficiary of the life insurance policy on Mr. Walker’s life, that is paid for by Union Carbide. On that point, the agreement provides in pertinent part:
It is further agreed that Donald Ray Walker shall convey to Sylvia Goodman Walker the entire undivided one-half (1/2) interest in and to the following life insurance policies, to wit:
InA. Woodmen of the World Life Insurance Society Policy Certificate Nos. 4193291 and 4356478, Sylvia Goodman Walker to be responsible for all premium payments on said policies.
B. Life Insurance coverage through Union Carbide Corporation, listing Sylvia Goodman Walker as beneficiary.
*474 As noted by the trial court, there was and still is only one company sponsored life insurance policy on Mr. Walker. The premiums are paid by the company. Mr. Walker changed the beneficiary of this policy on March 12, 2001 from Mrs. Walker to his current wife. Mrs. Walker wanted the trial court to require Mr. Walker to change the beneficiary back to her name, arguing that the agreement mandated it. The trial court concluded that the language in the agreement did not state that Mrs. Walker must be named the beneficiary of the policy and refused to order Mr. Walker to change the beneficiary back to Mrs. Walker.
Upon review, while we agree that the language in the agreement does not address the question of whether Mrs. Walker must be named as the beneficiary, we find that the agreement does transfer full ownership of the policy to Mrs. Walker. This is within the policy provisions, providing that the owner may make a legal transfer of the ownership of the policy to any person he or she chooses. This is exactly what Mr. Walker did in the partition agreement. Thus, Mr. Walker, having no ownership rights in the policy, was without any right or authority to change the beneficiary. As long as the policy in question, the Union Carbide sponsored term policy, in existence at the time of the partition agreement, remains viable, it belongs to Mrs. Walker in full ownership, and Mr. Walker has no right to change the beneficiary designation on that policy. On remand, the trial court will issue the orders necessary to reverse the beneficiary change attempted by Mr. Walker.
l1?,For the reasons set out above, we reverse the trial court in part, finding that the provision in the addendum to the partition that limits Mrs. Walker’s alimony to no more than 15% of Mr. Walker’s monthly salary prior to age 62, took effect on March 1, 2001, when Mr. Walker received his retirement benefits, and further finding that Mr. Walker, having no ownership interest in his company sponsored life insurance policy, had no legal right or authority to change the beneficiary on that policy. We affirm the trial court judgment in part, agreeing that the partition agreement did not mandate that Mrs. Walker be named as the surviving spouse beneficiary desig-nee of Mr. Walker’s retirement plan. And, we remand for a determination of the amount of alimony and/or retirement benefits due Mrs. Walker in accord with the views expressed in this opinion and for an order reversing the unauthorized change of beneficiary by Mr. Walker on the company sponsored life insurance policy on his life that is owned by Mrs. Walker.

REVERSED IN PART; AFFIRMED IN PART AND REMANDED.

. Based on the partial record before us, it appears that there was a defined plan by which the employee could defer receipt of retirement benefits, allowing them to accrue in a company account, and receive them at a later date in a lump sum. However, there is nothing in the record explaining, defining or setting out the rules of this plan.

. The record in this court provides little or no information about what kind of account this was or how it operated.

. Since the trial court found that May 1, 1999 was the triggering date limiting Mrs. Walker's alimony, information about Mr. Walker's gross earned income from that date until March 1, 2001, is not contained in the record and is necessary for a determination of the alimony obligation. Accordingly, the case must be remanded for a trial court determination of quantum.