511 So.2d 838 (1987)
Monica Camila Guital TIMM
v.
Rolando Emilio TIMM.
No. 87-CA-148.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1987.
*839 Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Robert C. Lowe, John B. Krental, New Orleans, for defendant/appellant.
Sydney J. Parlongue, Parlongue and Riegel, New Orleans, for plaintiff/appellee.
Before GAUDIN, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
This is an appeal from judgment condemning an ex-husband to pay arrearages in child support.
Monica Camila Guital Timm and Rolando Emilio Timm were divorced on December 15, 1981, following a year of living separate and apart. Of four children born of the marriage, two were then minors, Karen, born August 28, 1965, and Vivian, born February 11, 1972. In a subsequent judgment dated December 30, 1981 the court awarded custody of Karen and Vivian to the mother and fixed child support at $900 per month "less tuition payments paid by Rolando E. Timm and less the monthly housenote being paid by Rolando E. Timm." On May 27, 1982 the judgment was amended to order that Mr. Timm pay Mrs. Timm $900 per month child support with no deductions for tuition or mortgage payments. (Mrs. Timm's motion to amend judgment had stated that she wished to assume the responsibility for tuition and mortgage note and receive the full child support payment.) The community was partitioned on June 18, 1982, Mrs. Timm receiving the family home and furnishings.
The judgment which is the subject of this appeal arose from a rule for contempt and to accumulate past due child support filed by newly enrolled counsel for Mrs. Timm on July 2, 1986. Mr. Timm had reduced his child support payments to $450 per month as of September 1, 1983, allegedly by mutual agreement with Mrs. Timm, following Karen's eighteenth birthday. The matter was heard on November 5, 1986 and judgment rendered from the bench, ordering Mr. Timm to pay $17,550 in past due child support plus interest and attorney's fees of $350. The defendant then perfected a suspensive appeal.
*840 The sole issue before this court is whether the trial judge was correct in finding that the appellant acted unilaterally in reducing the in globo award of child support.
The statute regarding termination of child support, LSA-R.S. 9:309, provides that when a judgment sets out an in globo award for two or more children, the award terminates when the youngest child reaches majority.[1] Clearly, in an in globo award there is not an automatic termination of a portion of the child support when one of the children reaches majority. The father is not entitled to reduce his payments on a pro-rata basis without seeking court modification of the judgment. LaBove v. La-Bove, 503 So.2d 670 (La.App. 3rd Cir.1987). However, the law does recognize the enforceability of an agreement between the parties to modify the amount of child support. Patrick v. Patrick, 496 So.2d 521 (La.App. 1st Cir.1986), and cases cited therein. The burden of proof is upon the person seeking to reduce his obligation; there must be a clear showing that the parties agreed to the change; and the change must not be detrimental to the child. Dubroc v. Dubroc, 388 So.2d 377 (La.1980); Ramos v. Ramos, 425 So.2d 989 (La.App. 5th Cir.1983).
In the case before us the trial court ruled from the bench, as follows:
... The Court considers, after listening to the testimony in this case and reviewing the evidence, it does not reveal that an agreement existed between these parties which authorized Mr. Timm to satisfy his support obligation. Mr. Timm acted unilaterally and not by agreement with Mrs. Timm....
It is Mr. Timm's position that he reduced the child support pursuant to an oral agreement made in August, 1983 in which Mrs. Timm agreed to the reduction in return for his assistance to her in refinancing the family home. He had not sought a reduction through the court at any time.
The record reveals that soon after the partition of the community in 1982, Mrs. Timm took out a second mortgage on the house and in 1983 became delinquent in the payments. Mr. Timm maintains that the agreement to accept reduced child support took place on August 31, 1983, three days after Karen's eighteenth birthday, when he agreed to assist Mrs. Timm with refinancing the house. On that date Mrs. Timm executed a promissory note in his favor for $24,169.69, with a collateral mortgage note for $75,000. Mr. Timm then obtained and co-signed the new second mortgage on the family residence, which mortgage retired the earlier second mortgage, paid him $7,000 for previous monies loaned, and provided a cushion of about $10,000 for payments on the mortgage. From time to time during the three years after the partition and before the house was sold in October, 1985, Mrs. Timm borrowed money from her ex-husband, with the understanding that she would repay him when the house was sold.
Mr. Timm testified that he had not reduced the agreement to writing because he believed his ex-wife to have been in good faith. He argues that if she had not agreed to the reduction she would have complained earlier on, which she did not.
Mrs. Timm denies making any agreement with her husband in exchange for his help in refinancing the house. She testified that *841 she "thought when a child reaches eighteen, immediately the man's supposed to cut the child support...." She explained that she was "not born here" and did not know the law. (Both Mr. Timm and Mrs. Timm were born in Chile and moved to New Orleans in 1963.)
When asked why she waited nearly three years to file the rule for arrearage, Mrs. Timm replied:
I  I went to Mr. Parlongue because I have a daughter, she goes to Sacred Heart, and I pay four fifty a month for her tuition and school; no books, no nothing. So I wanted an increase in child support and we were going through the file and Mr. Parlongue told me that he should have paid me nine hundred dollars a month. This is how we arrived.
After several more attempts by the appellant's attorney to obtain a responsive answer to his question she stated:
Because I need the money to finish my daughter's school. I think he's entitled to pay at least for the schooling of his daughter.
Mr. Timm argues that Mrs. Timm's negotiations at the time of the sale indicated that he owed no prior child support. First, there was a request through her attorney that Mr. Timm remove an option to purchase the home, which he had obtained as a consideration of the community settlement. That option was enforceable only if Mr. Timm was current in child support payments; if he had been in arrears, then he would have had no option. Second, she acknowledged debts to her husband, which he agreed to cancel for $14,639.44 and which she paid him at the closing of the sale. She would have deducted any arrearage in child support from that sum if any had been owed.
Mrs. Timm was questioned about a letter from her attorney to Mr. Timm's attorney just before the sale, of which she received a copy. The letter contained an offer to compromise her debts to Mr. Timm by repaying a note minus back child support of $900. She acknowledged Mr. Timm's having responded by letter that she actually owed him $14,639.41. She admitted further that her attorney had determined that Mr. Timm was actually current in child support and that she paid from the proceeds of the sale the exact amount claimed by Mr. Timm. However, on redirect, Mrs. Timm stated that she had not ever authorized her attorney to reduce child support from $900 to $450 per month.
We are fully aware of the manifest error rule as applied to matters of child support. The court stated in Feazell v. Feazell, 445 So.2d 143 (La.App. 3rd Cir. 1984), at 146:
The trial court has great discretion in determination of factual matters such as the existence of any agreement relative to child support and, in the absence of an abuse, its decision will not be overturned on appeal....
We conclude from the record that the trial court was in error in finding that there was no agreement to reduce support. The evidence is convincing that an agreement was made in exchange for refinancing the house. It is undisputed that Mrs. Timm was represented by counsel prior to the sale of the house. If there had not been an agreement her attorney would have demanded at that time that the arrearage be deducted from moneys due to Mr. Timm from the sale.
The Supreme Court, in holding valid an agreement to suspend part of a child support award, explained in Dubroc v. Dubroc, supra, 338 So.2d at 380:
Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended. There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i.e., the enforcement of the child's right to support and upbringing.
*842 There is no suggestion in the record or in counsel's briefs that the child's right to support was jeopardized in any way.
Accordingly, for the reasons assigned, the judgment appealed from is reversed.
REVERSED.
NOTES
[1] LSA-R.S. 9:309. Termination of child support obligation upon majority; exception:

A. When an order or judgment awards child support in a specific amount per child, said child support award for said child shall terminate automatically and without any action by the obligor to reduce, modify, or terminate the award upon said child's attaining the age of majority.
B. When an order or judgment awards child support in globo for two or more children, said child support award shall terminate automatically and without any action by the obligor to reduce, modify, or terminate the award when the youngest child for whose benefit the award was made attains the age of majority.
C. An order or judgment of child support may continue with respect to any unmarried child who attains the age of majority as long as the child is a full-time student in a secondary school, has not attained the age of nineteen, and is dependent upon either parent. The major child shall be the proper party to enforce an order or judgment of child support which is continued beyond the age of majority pursuant to this Subsection.