631 So.2d 1183 (1994)
John L. NEW, Jr.
v.
Linda Lindon NEW.
No. 93-CA-702.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1184 Robert C. Lowe, Steven A. Glaviano, David M. Prados, New Orleans, for plaintiff/appellee, John L. New, Jr.
Roger I. Dallam, Gretna, for defendant/appellant, Linda Lindon New.
Before BOWES, GRISBAUM and CANNELLA, JJ.
BOWES, Judge.
Defendant/appellant, Linda Lindon New, appeals a judgment of the district court denying her rule to make past due child support executory. We reverse and remand.

FACTS
Plaintiff/appellee, John New, filed a petition for divorce in 1989. Included in the petition was a request for joint custody of the three children of the marriage, along with a detailed custody plan incorporating visitation parental responsibilities, etc. Mr. New further suggested that he would contribute $200.00 per month per child as child support, for a total of $600.00 per month which support would be increased by 5% per child per year effective November 20, 1990, and every year thereafter. In addition to tuition for one daughter, Mr. New suggested that he would maintain his life insurance coverage in favor of the children as beneficiaries, as well as medical and dental health insurance, with Mrs. New responsible for all other medical expenses. Mr. New would be entitled to claim the children as dependents; and finally, that Mrs. New should be awarded the use and occupancy of the family domicile "at her individual expense, pending partition of the community."
A default judgment of divorce was obtained in June of 1990 by Mr. New, which incorporated "verbatim" the terms and conditions set out in the petition relative to custody, support, and occupancy of the family domicile. In March, 1993, Mrs. New filed her rule to make past due support executory and for contempt, interest, and attorney fees. Following a hearing before the Family Court hearing officer a recommendation of arrearages in the amount of $22,410.30 was made. The matter was brought to the district court and on review there, the parties stipulated that the amount in dispute was $22,410.30. The trial court conducted a hearing and upon its conclusion, dismissed Mrs. New's rule, finding that there was no contempt and no arrearages due. In her oral reasons of judgment, the court stated, in part, as follows:
The Court is not finding Mr. New in contempt. The Court declines to hold Mr. New responsible for any arrearage, the Court considers the satisfaction of his child support obligation as having been made with regard to the child support payment being made, I mean the house note payment being made in lieu of the child support as an act having been done strictly for the benefit of the minor children. Mr. New testified and the Court considers from the totality of the circumstances that his testimony is more credible. The Court, therefore, holds that the rule for contempt is dismissed.
At trial, Mr. New testified that he made payments on the mortgage note of the family home in lieu of making the child support payment ordered in the original judgment. In response from appellant's counsel questions as to whether he had made the support payments, Mr. New responded:
Q. You have not done this?
A. Yes, sir, that's correct because I told her in lieu of that I would be picking up and paying the note on the house, which exceeded the child support amounts.
Q. You told her that?
A. Yes, sir.
Q. When did you tell her that?
A. I told her that from the very getgo (sic), from the very beginning.

*1185 Q. I'm sorry?
A. From the very beginning, sir.
Q. What would you define as the very beginning?
A. In November of the judgment day, from the time the first payment was to be rendered, sir.
* * * * * *
A. Okay, so at that time when this judgment was rendered, I stated that the payments would be, I would pay the house payment, unless she wanted to pay the house payment, I could pay the note, I could pay her the $600.00 and she could pay the note on the house or I could pay the note on the house.
Q. When did that occur?
A. Right after this judgment.
Q. Right after the judgment?
A. Right.
Q. This would be, when you say right after, can you give me a time frame, a day, a week a month?
A. I can't tell you the exact day, week or the month, it was right after the judgment, sir.
Q. Right after the judgment. Okay, where did this conversation take place?
A. It was in front of the house as I recall, when I was picking up the kids.
Q. Okay, in front of the Warbler address?
A. That's correct, yes, sir.
Q. Who was present?
A. Just Linda and myself.
Q. Just the two of you. And, at that point you told her you were going to pay the house note instead of paying her the child support directly?
A. Yes, sir.
* * * * * *
Q. Tell us what you recognize as being your handwriting, what does it say?
A. It says, Linda these are your responsibility, I have asked all bills to be placed on your name, I am clearing up your past charges and am paying the house note in lieu of payments to you until settlement is completed. Please be responsible and ask the children to return my phone calls. Thanks, John.
* * * * * *
Q. Subsequently after you delivered this envelope, did you and Mrs. New have any further discussions pertaining to the house mortgage or to the child support?
A. I would say before and after.
Q. Tell me about the after the envelope?
A. Again, unfortunately I can't recall the exact date, but on another occasion I mentioned to her if she had any intent on paying the house note I offered to write the child support check if she would agree to pay the house note and again, the answer I got was you're going to do whatever you want to do, so whatever....
Q. Now, you testified when you had a conversation with her sometime you thought in June or around the time that the judgment was rendered, what did you tell her specifically?
A. I told her that she was responsible for the house note and that I would give her the $600.00, but I wanted some assurance that she would pay the house note.
Q. Why did you want the house note to be paid?
A. Sir?
Q. Why did you want the house note to be paid?
A. Because I didn't want the kids to be displaced.
Q. What did she say when you told her that?
A. She just shrugged her shoulders and said something like whatever.
For her part, Mrs. New denied that she ever discussed with her former husband the matter of having the house note paid in lieu of receiving child support, although she agreed that she had not paid the notes herself. When questioned as to her interpretation of the judgment which awarded her occupancy of the family home at her own expense, she stated that she believed that to mean maintenance:
... like the thousands of dollars that have gone into roofing and plumbing and things *1186 like that, which I thought, you know, was consideringyou don't want to hear any more of this eitherconsidering the age of the house and the things I've had to put in there, I thought it was pretty much fair for me to, you know, get the roof fixed, rather than, you know, keep the buckets under the ceiling. But, it really wasn't exorbitant the fact that he did actually pay the house note. But, I didn't make, I did not have the interpretation that the house note was actually in there for me cause I thought it was something nice.
Mr. New has paid the house note from the time suit was originally filed in November of 1989. The income tax returns filed in the record, as well as the testimony of appellee, established that Mr. New deducted from his income tax the interest mortgage payments made by him in 1990 and 1991; he also claimed the three children as legal dependents. Mr. New also produced checks which evidenced that he paid other bills, for utilities, department stores, etc. Mr. New paid tuition to several schools, such as St. Louis King of France, Ursuline Academy, and Rummel. Numerous checks were submitted for various expenses which Mr. New testified were on behalf of appellant and/or the children. Mrs. New admitted that her former husband did pay certain bills on her behalf.

ANALYSIS
LSA-R.S. 9:374 provides for the determination of the use and occupancy of the family home in divorce proceedings. Mr. New chose not to avail himself of the opportunity for a contradictory hearing but agreed that Mrs. New, who had physical custody of the children from Monday through Friday would, with the children, occupy the home.
In Dubroc v. Dubroc, 388 So.2d 377 (La. 1980), our Supreme Court affirmed that parents may agree to suspend support payments under certain circumstances:
Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended. There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i.e., the enforcement of the child's right to support and upbringing.
For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable.
[Emphasis supplied].
In order for an extrajudicial agreement to modify a court order of support to be enforceable it must be proven, by the party so alleging, that the parties clearly agreed to the modification. Timm v. Timm, 511 So.2d 838 (La.App. 5 Cir.1987); Hendrix v. Hendrix, 457 So.2d 815 (La.App. 1 Cir.1984); Byrd v. Byrd, 617 So.2d 182 (La.App. 3 Cir.1993); Kliebert v. Kliebert, 590 So.2d 1352 (La.App. 5 Cir.1991). The agreement must be specific. Lavergne v. Lavergne, 556 So.2d 918 (La.App. 3 Cir.1990); Flynn v. Flynn, 434 So.2d 1161 (La.App. 1 Cir.1983). Failure to protest or acquiesce in a unilateral reduction does not defeat an action for arrearages or amount to a waiver. Dubroc, supra; Kliebert, supra.
Notwithstanding the very general credibility finding of the trial judge which she has a right to exercise, the question presented here is one of law, not credibility of the witnesses. We cannot logically construe the evidence and testimony as a clear and specific agreement between the parties *1187 as is required by law and specifically the jurisprudence cited above, to modify the court ordered support. Rather, it appears that Mr. New made a unilateral decision in which Mrs. New acquiesced to some extent. He testified repeatedly and specifically that he told her what he was going to do. While his testimony may, indeed, be credible, we do not find that it constitutes proof of a clear and specific agreement; rather, it proves a determination by Mr. New that he chose to pay the house note rather than pay the child support.
Except under a few exceptional circumstances noted in the jurisprudence, child support is satisfied only by payment to the parent to whom it is due. See Kliebert, supra; Hendrix, supra. Payment to third parties will not satisfy that obligation, Hendrix, supra, and Byrd, supra, although the former husband is entitled to credit for payments made directly on behalf of the children and at the request of the wife. Dunn v. Dunn, 546 So.2d 819 (La.App. 5 Cir.1989); Keefe v. Keefe, 559 So.2d 987 (La.App. 5 Cir.1990). The trial court in the present case stated, when Mr. New introduced his checks into evidence, that:
... you have to recognize, Mr. Dallam, and I think I mentioned this yesterday in chambers, that we're in the realm of `equity' now. And I really do want to know that Mr. New's overall contribution to his family has been.
The jurisprudence has established beyond doubt that justice or equity does not operate to nullify or reduce an accumulated support award until the judgment is altered by subsequent judgment or operation of law. Hendrix, supra, and cases cited therein.
The allegation that Mrs. New was obliged under the judgment to pay the house note is irrelevant. Even were we to interpret the judgment in that way, Mr. New is still not relieved of his obligation to pay child support.
We cannot logically conclude that, under the law and the jurisprudence previously cited (and the particular circumstances), that the trial court intended to award custody of three minor children to Mrs. New, along with only $600.00 per month in child support and, under the guise of her "individual expense" require her to pay the monthly note in excess of $600.00, plus all maintenance, upkeep, and repairs. Such a judgment would be to the advantage of no one but Mr. Newand certainly would not be in the best interest of the children.
The community home is a community obligation. Mr. New will be entitled to appropriate credit for all house payments which he made at the time the community is partitionedbut not nowin this proceeding.
LSA-C.C.P. art. 3945 provides that:
When a payment of support under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due support determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due support.
[Emphasis supplied].
The provisions of this article do not give any discretion to the trial court when it is proven that payments are in arrears. The courts are not empowered by equity or otherwise to nullify or reduce accumulated alimony until a previous judgment has been amended or reduced by subsequent judgment or operation of law. Rivers v. Rivers, 402 So.2d 733 (La.App. 4 Cir.1981); Hicks v. Hicks, 450 So.2d 30 (La.App. 3 Cir.1984).
[Emphasis supplied].
Again, we hold that a question of law, not credibility is involved here. Therefore, we hold that the trial court erred to the extent that it resorted to "equity" to relieve plaintiff of his support obligation.
Mr. New did provide the court with checks, many of which (such as tuition) clearly evidence payments for the direct benefit of the children. Part of the original judgment ordered Mr. New to pay certain tuition (for Gwendolyn) and that Mrs. New would be liable for school expenses for the remaining children. Many of the checks are for department stores, credit cards, utilities, etc. which Mr. New claimed he paid on behalf of his wife and to which he will certainly be entitled *1188 to present for credit at the partition proceeding.
However, we cannot conclude from the testimony that any of the checks presented were paid both for the direct benefit of the children and at the request of Mrs. New as distinguished from Dunn, supra, where the payments were made at the request of the wife. For example, Mrs. Dunn referred the school directly to Mr. Dunn for payment of tuition. In the present case such detailed evidence is lacking. Therefore, we are unable to offset past due support with any such items (as in Keefe, supra).
We do agree, however, that Mr. New should not be held in contempt for failure to pay support.
La.C.C.P. art. 224 provides in pertinent part:
Any of the following acts constitutes a constructive contempt of court:
. . . . .
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court; ..."
Under our jurisprudence interpreting this statute, it must be shown by the party seeking the contempt ruling that the alleged offender wilfully disobeyed a direct order of the court prior to the contempt rule; otherwise, he should not be held in contempt. James v. Spears, 372 So.2d 617 (La.App. 1st Cir.1979); Lambert v. Adams, 347 So.2d 883 (La.App. 3rd Cir.1977).

Hawkins v. Hawkins, 592 So.2d 843 (La. App. 3 Cir.1991).
One act enumerated as constituting a constructive contempt of court is "(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court; ..." Wilful disobedience is an act or failure to act that is done intentionally, knowingly and purposefully, without justification. A trial court is vested with great discretion in determining whether a person is to be held in contempt for wilful disobedience of a trial court judgment. Kirby v. Kirby, 579 So.2d 508, 519 (La.App. 4th Cir.1991), writ denied 582 So.2d 1308 (La. 1991); Tschirn v. Tschirn, 434 So.2d 113 (La.App. 5th Cir.1983).

Bruzeau v. Bruzeau, 589 So.2d 499 (La. App. 5 Cir.1991).
We do not find an unjustified failure in the present case, as it appears Mr. New did not willfully disobey the court order with the requisite intent to disobey.
However, Mrs. New is entitled to legal interest on the arrearages from the date the payments were due. Angelica v. Angelica, 608 So.2d 256 (La.App. 5 Cir.1992).
In addition, appellant is entitled to attorney fees and costs because:
LSA-R.S. 9:375 A provides:
Sec. 375. Award of attorney's fees
A. When the court renders judgment in an action to make executory past-due payments under a spousal or child support award, or to make executory past-due installments under an award for contributions made by a spouse to the other spouse's education or training, it shall, except for good cause shown, award attorney's fees and costs to the prevailing party.
[Emphasis supplied].
The amount of costs and attorney's fees to be awarded is a matter within the sound discretion of the trial judge. Ourso v. Ourso, 482 So.2d 824 (La.App. 4 Cir.1986), writ den. 484 So.2d 139 (La.1986). A court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered in contempt of court for failure to pay alimony proceedings. Andras v. Andras, 410 So.2d 328, 331 (La.App. 4 Cir.1982).
Angelica, supra.
Finding that defendant had "good cause," or even had substantially overpaid at times does not constitute "good cause" to deny attorney fees. Hawkins, supra. Additionally, on appeal, defendant has requested attorney fees for the appellate portion of the case. Appellant is entitled to attorney fees for the trial on the merits. However, the trial court is the proper forum for an award of those attorney fees due. We therefore remand the *1189 case for determination of this portion of the judgment.
Appellant has submitted a statement relative to his attorney's fee for this appeal, and we find that $1,000.00 will sufficiently recompense her for such, and hereby award that amount.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of defendant/appellant, Mrs. New, making the entire amount of $22,410.30 executory, with legal interest on each payment from the monthly due date until paid; further, attorney fees for this appeal in the amount of $1,000.00 is awarded to defendant/appellant, and plaintiff/appellee is taxed with all costs of the trial court, and of this appeal; and the case is remanded for determination of attorney fees due to defendant/appellant for the original trial of the matter on the merits.
REVERSED, RENDERED AND REMANDED.