MARC E. JOHNSON, Judge.
li>This lawsuit involves past due spousal support and the supplemental partition of community property. Marc Delesdernier, Jr. appeals a judgment of the trial court awarding Vinca Carevich Delesdernier past due spousal support, and Ms. Deles-dernier appeals a judgment of the trial court denying her Petition for Supplemental Partition of Community Property.[1] For the reason that follow, we amend the judgment of past due spousal support and affirm it as amended, and affirm the judgment denying the supplemental partition of community property.

FACTS & PROCEDURAL HISTORY

The parties were married in June 1956 and had three children. In October 1982, Mr. Delesdernier filed a Petition for Divorce based on the parties living separate and apart for one year. A judgment of divorce was rendered on June 25, |a1984. In the judgment of divorce, Mr. Delesder-nier was ordered to pay $2,700 per month in alimony and to maintain a $250,000 life insurance policy on his life payable to Ms. Delesdernier. He was also ordered to provide Ms. Delesdernier with a replacement vehicle every five years beginning two years from the date of the judgment.[2] On the same day of the divorce judgment, the parties entered into a community property settlement.
Thereafter, Mr. Delesdernier paid $2,700 per month from the date of the divorce judgment through the end of 1986. According to Ms. Delesdernier, Mr. Deles-dernier reduced the monthly payment to $1,000 in 1987 and paid the reduced monthly payment through August 1998. In August 1998, Mr. Delesdernier increased the monthly payment to $1,500, which he continued to pay through the time the rule was filed. Mr. Delesdernier admitted reducing the monthly payment at some point, but testified he did not recall ever paying less than $1,500 per month. There was no documentary evidence regarding the monthly payments despite Ms. Delesdernier’s claim that she kept a ledger of all payments. She indicated during her November 22, 2010 deposition that she was unable to find the ledger but had seen it two months earlier.[3] Mr. Delesdernier stated his records from 1986-2005 were destroyed as a result of Hurricane Katrina.
Contrary to the requirements of the 1984 divorce judgment, Mr. Delesdernier did not provide Ms. Delesdernier a replacement vehicle every five years. However, he did buy her a Mercury Grand Marquis in 1998. According to Mr. Deles-dernier, Ms. Delesdernier never asked for a car until 1998. Although the divorce judgment stated the car was to be financed over 60 months with the car |4note constituting alimony, Mr. Delesdernier could not recall anything about how the car was paid for. Ms. Delesdernier indicated that the car was financed for 60 months with a *592 monthly note of $534. She stated she paid the monthly car note because she was worried about what would happen if Mr. Delesdernier failed to pay the note. She explained that Mr. Delesdernier increased monthly spousal support from $1,000 to $1,500 after the purchase of the car.
On March 25, 2010, Ms. Delesdernier filed a Rule for Contempt and Arrearages seeking past due spousal support for the amount Mr. Delesdernier underpaid. In an Amended Rule for Contempt and Ar-rearages, Ms. Delesdernier indicated that she sought past due spousal support for the underpayment from 1986 through the date of filing. She also sought monthly car payments from 1986 through the date of filing claiming Mr. Delesdernier failed to provide her with a new car every five years as required by the divorce judgment.
On the same day, Ms. Delesdernier also filed a Petition for Supplemental Partition of Community Property seeking the partition of the community’s interest in Mr. Delesdernier’s Crescent River Port Pilots’ Association Pension Plan (“CRPPA Pension”). She alleged the CRPPA Pension had not been partitioned in the 1984 community property agreement.
Mr. Delesdernier responded to the filings by filing a Rule to Enforce ExtraJudicial Modification of Spousal Support and to Terminate or Reduce Spousal Support. He also asserted various affirmative defenses including equitable estoppel and laches. He subsequently filed an exception of prescription on the arrearages, which was denied after a hearing.
On June 30, 2011, the parties proceeded to a hearing on the spousal support issues. The trial court took the matter under advisement and rendered a judgment, without reasons, on August 31, 2011. In its judgment, the trial court found Mr. | ^Delesdernier owed $596,168 in spousal support arrearages plus interest from the date each payment was due. The trial court specifically found there was no extrajudicial modification or mutual agreement between the parties to reduce the spousal support ordered in the 1984 divorce judgment. The trial court further granted Mr. Delesdernier’s rule to terminate spousal support, with the exception of the life insurance policy which it ordered Mr. Deles-dernier continue to maintain. Mr. Deles-dernier timely filed a suspensive appeal.
Thereafter, on October 6, 2011, the parties proceeded to a traversal on the community property for a determination of whether the CRPPA Pension was separate or community property for purposes of Ms. Delesdernier’s Petition for Supplemental Partition. The trial court rendered judgment on October 12, 2011 denying Ms. Delesdernier’s Motion to Traverse finding that the 1984 community property agreement acknowledged complete liquidation of community assets and released Mr. Deles-dernier from further community property claims. The trial court also found that Ms. Delesdernier waived her interest in the CRPPA Pension in exchange for the $250,000 life insurance policy Mr. Deles-dernier was ordered to maintain in the 1984 divorce judgment. Ms. Delesdernier timely appealed this judgment.

ISSUES

Each party raises several issues in connection with the judgment each challenges. In his appeal, Mr. Delesdernier raises four issues relating to the judgment for arrear-ages: (1) the trial court erred in finding Ms. Delesdernier’s claim for arrearages was not prescribed; (2) the trial court erred in concluding he and Ms. Delesdernier did not confect an extrajudicial modification of the 1984 spousal support award wherein they agreed he would reduce spousal support to $1,500 per month; (3) the trial court erred in refusing to consider *593 his affirmative | fidefenses; and (4) the trial court erred in its calculation of arrearages relating to the replacement automobile.
In her appeal, Ms. Delesdernier raises the following issues relating to the judgment involving the CRPPA Pension: (1) the trial court erred in finding the divestiture language contained in the community property settlement agreement precluded the partition of the CRPPA Pension; (2) the trial court erred in finding she waived her interest in the CRPPA Pension in exchange for the $250,000 life insurance policy considering the language of the community property settlement agreement and even the inadmissible extrinsic evidence; and (3) the trial court erred in allowing parole evidence to determine the intent of the parties regarding the CRPPA Pension and the life insurance policy.

MOTION TO DISMISS ISSUES

After Ms. Delesdernier filed her appel-lee brief in response to his appeal, Mr. Delesdernier filed a Motion to Dismiss with this Court seeking to dismiss two issues raised by Ms. Delesdernier in her appellee brief.
In her appellee brief, Ms. Deles-dernier not only responded to Mr. Deles-dernier’s arguments but also claimed the trial court erred in denying attorney’s fees in connection with her Rule for Arrearages and erred in terminating Mr. Delesdernier’s spousal support obligation.[4] Mr. De-lesdernier seeks to dismiss these two issues on the basis Ms. Delesdernier failed to file an answer to the appeal and, therefore, is precluded from raising these issues. We agree and grant Mr. Delesder-nier’s Motion to Dismiss these two issues raised in Ms. Delesdernier’s appellee brief.
17An appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside or reversed by an appellate court. La. C.C.P. art. 2082. Alternatively, an appellee who “desires to have the judgment modified, revised, or reversed in part” must file an answer to the appeal “not later than fifteen days after the return day or the lodging of the record whichever is later.” La. C.C.P. art. 2133(A); Foreman v. Babin, 04-423 (La. App. 5 Cir. 10/12/04), 887 So.2d 143, 153.
The record in this case was lodged January 12, 2012. The trial court ordered the appeal be returnable to this Court “in accordance with law.” Under La. C.C.P. art. 2125, an appeal shall be returnable to the appellate court 45 days from the date estimated costs are paid. Our records reflect costs were paid on October 6, 2011, which would make the return date November 20, 2011. The lodging of the record was later; thus, Ms. Delesdernier had 15 days from January 12, 2012, or until January 27, 2012 to answer the appeal. Ms. Delesdernier never filed an answer. Even if we were to construe her appellee brief as an answer, it was not filed until March 16, 2012, well beyond the 15-day time period to file an answer. We further note that Ms. Deles-dernier did not challenge the August 31, 2011 judgment in her appeal of the October 12, 2011 judgment.
A party who has not appealed the judgment or answered the appeal may not seek to have the trial court’s judgment modified in its favor. Saacks v. Saacks, 97-570 (La.App. 5 Cir. 1/27/98), 708 So.2d 1077, 1078-79, vmt denied, 98-502 (La.4/3/98), 717 So.2d 232. Therefore, we will not consider Ms. Delesdernier’s two *594 issues relating to the August 31, 2011 judgment raised in her appellee brief, and grant Mr. Delesdernier’s motion to dismiss these two issues from Ms. Delesdernier’s appellee brief.

\JLAW & ANALYSIS

Spousal Support

Prescription

Mr. Delesdernier argues the trial court erred in denying his exception of prescription. An action for spousal support arrearages is subject to a liberative prescription of five years. La. C.C. art. 3497.1.[5] Thus, unless there has been an interruption of prescription, Ms. Delesder-nier’s rule seeking arrearages from 1986 through March 2005, or five years prior to the date the rule was filed, is prescribed.
Prescription is interrupted when an obli-gee commences action against the obligor and when the obligor acknowledges the right of the obligee. La. C.C. arts. 3462, 3464; Evertsen v. Jenssen, 552 So.2d 1277, 1278 (LaApp. 5th Cir.1989). The jurisprudence unanimously holds that payments made pursuant to a judgment ordering support are an acknowledgement of the debt and interrupt prescription. Id.; Weatherspoon v. Weatherspoon, 433 So.2d 319, 321 (LaApp. 1st Cir.1983); Reed v. Reed, 399 So.2d 1255, 1258 (LaApp. 4th Cir.1981); Morasco v. Metcalf, 381 So.2d 901, 902-03 (LaApp. 3rd Cir.1980); Manning v. Manning, 259 So.2d 358, 359 (La. App. 2nd Cir.1972).
In this case, the parties agree that Mr. Delesdernier made a spousal support payment every month for the past 26 years. Because there has never been a five-year lapse between payments, Ms. Delesdernier’s claim for spousal support arrearages from 1986 through the time she filed her rule has not prescribed. Therefore, the trial court correctly denied Mr. Delesder-nier’s exception of prescription.
|flMr. Delesdernier argues the 40 years of jurisprudence on the issue of whether monthly spousal support interrupts prescription is incorrect and implores us to reconsider the issue. He contends none of the cases make the crucial classification of spousal support as either a conjunctive or single obligation. He asserts spousal support is a conjunctive obligation with each support payment subject to its own prescriptive period, similar to rent payments.
Despite Mr. Delesdernier’s impassioned plea, we find no merit in his argument and no error in the jurisprudence. One of the earliest cases, Davis v. Contorno, 234 So.2d 470, 474 (La.App. 1st Cir.1970), found that support is a single obligation. Thus, Mr. Delesdernier’s monthly payments pursuant to the 1984 spousal support judgment were an acknowledgement of a single support obligation sufficient to interrupt the prescriptive period provided for by La. C.C. art. 3497.1.
As part of his prescription argument, Mr. Delesdernier also argues that his monthly payments should be imputed to the oldest debts. Under the law of imputation, Mr. Delesdernier contends he paid the full amount of spousal support through 1998.[6] Under this theory, Mr. Delesderni *595 er asserts Ms. Delesdernier’s claim for arrearages prescribed five years later, or in 2003. Under La. C.C. art. 1864, an obligor who owes several debts to an obli-gee has the right to impute payment to the debt he intends to pay. Because spousal support is a single obligation, the law of imputation does not apply.

Extrajudicial Modification

Mr. Delesdernier next argues that the trial court erred in finding the parties had not confected an extrajudicial modification of the 1984 divorce judgment. He 110maintains he and Ms. Delesdernier agreed that he would reduce monthly spousal support payments to $1,500.
Generally, a judgment ordering spousal support remains in full force until the party ordered to pay it has the judgment modified or terminated by a court. Halcomb v. Halcomb, 352 So.2d 1013, 1016 (La.1977); Bourgeois v. Bourgeois, 09-106 (La.App. 5 Cir. 6/23/09), 16 So.3d 431, 439. Unless reduction, modification, or termination is provided for by operation of law, the support judgment remains enforceable even if a cause for reduction may have occurred which would, upon proper suit, warrant such a reduction. Halcomb, supra. The policy behind this rule is that the law does not want to encourage those owing spousal support to engage in “self-help” by unilaterally relieving themselves of the obligation to comply. Id. The Louisiana Supreme Court has explained that, “[a]ny other rule of law would greatly impair the sanctity of judgments and the orderly processes of law.” Halcomb, 352 So.2d at 1016.
An exception to this general rule is when the parties have “clearly agreed” to waive or to otherwise modify the eourt-ordered payments. Vallaire v. Vallaire, 433 So.2d 315, 318 (La.App. 1st Cir.1983). Mere acquiescence in the obligor’s failure to pay the full amount of support does not constitute a waiver. Id.; Mizell v. Mizell, 37,004 (La.App. 2 Cir. 3/7/03), 839 So.2d 1222, 1227; McDaniel v. McDaniel, 03-1763 (La.App. 3 Cir. 5/19/04), 878 So.2d 686, 691. The party asserting the existence of an extrajudicial modification has the burden of proving a clear and specific agreement. Rachal v. Rachal, 35,074 (La. App. 2 Cir. 10/12/01), 795 So.2d 1286, 1289.
In this case, Mr. Delesdernier testified he and Ms. Delesdernier agreed that he would reduce the monthly support payments to $1,500, but they did not have a written agreement to that effect. Mr. De-lesdernier did not recall when they Indiscussed the matter, but explained that when he told Ms. Delesdernier he would be reducing the support payments, she responded “okay.” He took her response to mean she was agreeable to the reduction. Mr. Delesdernier stated Ms. Deles-dernier never protested the lower payments and did nothing to make him believe the two did not have an agreement for the lower amount. Mr. Delesdernier admitted he and Ms. Delesdernier rarely spoke to each other after the divorce. He stated they did not speak to each other between the time they discussed the reduction of support payments and the time she requested a car in 1998, which was also the last conversation he had with her prior to filing the present rule for arrearages.
Mr. Delesdernier indicated he reduced the payments because of financial problems he started to experience with various business ventures that ultimately caused him to file for bankruptcy in 1988. He *596 stated he was dismissed from bankruptcy in 1989 and that his financial problems were resolved by 2000. Mr. Delesdernier testified he never thought of increasing the support payments after resolution of his financial problems because he believed he and Ms. Delesdernier had an agreement for the $1,500 per month. He further stated he never filed a rule to reduce spousal support because of the agreement.
Ms. Delesdernier testified that Mr. De-lesdernier paid the full amount of support for the first two years after the judgment. He then told her that he was having difficulty paying the $2,700 per month, which is when he decreased the monthly payments to $1,000. According to Ms. Deles-dernier, she asked when he would correct the deficit at which time Mr. Delesdernier threatened that she would not get anything if she pressed him. She stated she did not agree to the $1,000 monthly payments, but rather just let the reduction happen because she could not handle any confrontation with Mr. Delesdernier. She stated she did not pursue the | ^matter legally because it was too much pressure for her to handle. She explained that she sometimes had to call and track Mr. Deles-dernier down to get him to pay the $1,000 payments and those confrontations made her a nervous wreck. When she told Mr. Delesdernier that he still owed her alimony in 1998 at the time of the car purchase, he had no response. Ms. Delesdernier testified it took her over 20 years to file for arrearages because she was intimidated by Mr. Delesdernier.
Based on this evidence, the trial court found the parties had not entered into an agreement to reduce spousal support payments. To the contrary, the trial court specifically found Mr. Delesdernier unilaterally reduced the amount of his monthly payment and that Ms. Delesdernier merely acquiesced to the reduction.
The trial court is vested with much discretion in alimony matters and its findings may not be disturbed absent manifest error. A trial court’s discretion in spousal support matters may be disturbed when there has been manifest error in factual determinations. McMullen v. McMullen, 11-220 (LaApp. 5 Cir. 12/13/11), 82 So.3d 418, 421.
After review of the record, we do not find the trial court’s finding was manifestly erroneous. None of the evidence presented substantiated Mr. Delesdernier’s contention that he and Ms. Delesdernier had entered into an agreement to reduce the spousal support payments, and at no time did Mr. Delesdernier seek to obtain a written agreement or to formally modify the judgment.

Affirmative Defenses

In his third assignment of error, Mr. Delesdernier contends the trial court erred in failing to consider his affirmative defenses. The record shows Mr. Deles-dernier filed a pleading captioned “Affirmative Defenses of Estoppel, Laches, and Extrajudicial Modification.” He subsequently filed a supplemental 1^motion asserting the affirmative defense of detrimental reliance. In his memorandum in support of his defenses, he argued that equitable estoppel/detrimental reliance applied to preclude Ms. Delesdernier from collecting arrearages because he relied, over the past 24 years, on her agreement to allow him to pay a reduced amount of spousal support because of the financial hardship he faced. He further argued the doctrine of laches precluded Ms. Delesder-nier from the arrearages because of her inexcusable delay in instituting suit. In its judgment awarding arrearages, the trial court denied Mr. Delesdernier’s defenses of estoppel and laches after concluding the defenses had no application in a matter for *597 arrearages on a judgment of spousal support.
We first note that the doctrine of laches is inapplicable in Louisiana. Laches is an equitable doctrine found in common law and its purpose is to bar prosecution of stale and antiquated demands which would cause injustice if pursued. Molero v. Bass, 322 So.2d 452, 454 (La.App. 4th Cir.1976), writ denied, 325 So.2d 609 (La.1976). It has always been the general view that the common law doctrine of laches has no place in Louisiana law; however, there were some cases that left open the possibility of the application of the doctrine in certain cases. In Fishbein v. State ex rel. Louisiana State University Health Sciences Center, 04-2482 (La.4/12/05), 898 So.2d 1260, 1270, the Louisiana Supreme Court repudiated those cases that allow the doctrine of laches by explaining the doctrine is in conflict Louisiana law regarding prescription. Accordingly, we find no error in the trial court’s refusal to apply the doctrine of laches.
Regarding Mr. Delesdernier’s claim of equitable estoppel/detrimental reliance,[7] “equity will not nullify or reduce an accumulated alimony ... award until 1 uthe judgment is altered or amended by a subsequent judgment or is terminated by operation of law.” Vallaire, 433 So.2d at 317; See also, Neiv v. New, 93-702 (La. App. 5 Cir. 1/25/94), 631 So.2d 1183, 1187, writ denied, 94-470 (La.4/4/94), 635 So.2d 1113. Further, equitable considerations and estoppel cannot prevail in conflict with the positive law. In re Succession of Bailey, 11-147 (La.App. 5 Cir. 11/29/11), 82 So.3d 322, 326.
Louisiana Code of Civil Procedure article 3946 provides that “[w]hen a payment of support under a judgment is in arrears .... the court shall render judgment for the amount of past due support.” (Emphasis added.) The trial court has no discretion once it is proven that support payments are in arrears. New, supra. Thus, the trial court did not err in denying Mr. Delesdernier’s defense of equitable estop-pel/detrimental reliance.[8]

Calculation

In his last assignment of error, Mr. Delesdernier asserts the trial court erroneously calculated the amount of ar-rearages. He specifically challenges the trial court’s calculation relating to the replacement automobile. He contends there is no evidence to support a finding that the amount of arrearages for failing to provide a replacement vehicle from 1986 through the present was $534 per month.
The spousal support judgment ordered Mr. Delesdernier to “provide-a replacement automobile, comparable to her present automobile every five (5) years beginning two (2) years from the date of this judgment. Said cars will be financed over a sixty month period and the car payments shall constitute alimony.” Mr. Delesdernier admitted he only provided one replacement vehicle for Ms. | j ¡¡Deles dernier and *598 that was in 1998.[9] Further, Ms. Delesder-nier testified that she paid the monthly note for the 1998 vehicle, which was $584 per month financed over five years. Thus, the record clearly establishes that Mr. De-lesdernier was in arrearages for the cost of the replacement vehicles.
The trial court did not provide a breakdown of its arrearages award. However, it appears from the record that the trial court used the calculations provided by Ms. Delesdernier, which amounted to $161,268 in arrearages for the replacement vehicles based on $584 per month from July 1986 through August 2011.[10] We find the trial court erred in its calculation of these arrearages.
As mover for the arrearages, Ms. Delesdernier bore the burden of proving the amount of the arrears. Jones v. Jones, 99-35 (La-App. 3 Cir. 7/14/99), 747 So.2d 94, 97; Singleton v. Singleton, 423 So.2d 791 (LaApp. 4th Cir.1982), writ denied, 427 So.2d 1210 (La.1983). The only evidence Ms. Delesdernier offered to prove the amount of arrearages owed for the replacement vehicles was the fact that the monthly car note for the replacement vehicle in 1998 was $534. Ms. Delesdernier failed to present any evidence regarding the type or value of the automobile she drove in 1986, what would have constituted a comparable automobile from 1986 through 1998, and how much it would have cost to replace her automobile with a comparable one during that time.
Because there was inadequate evidence regarding the value of a replacement vehicle from 1986 until August 1998, we find Ms. Delesdernier failed to meet her burden of proof of the amount of arrearages owed during this time. Therefore, we |,6reduce the amount of arrearages Mr. Delesdernier was ordered to pay by $77,430,[11] and amend the August 31, 2011 judgment to reflect the total amount of arrearages owed to be $518,738.

Partition of CRPPA Pension

We next address Ms. Delesdernier’s appeal from the trial court’s October 12, 2011 judgment relating to the CRPPA Pension.
Ms. Delesdernier first argues the trial court erred in finding the divestiture language contained in the community property settlement agreement (“the Agreement”) precluded the partition of the CRPPA Pension. She asserts that because the CRPPA Pension was not specifically referenced in the Agreement, it retained community property status and is subject to a supplemental partition.
Ms. Delesdernier next argues the trial court erred in finding she waived her interest in the CRPPA Pension in exchange for the $250,000 life insurance policy. She contends there is no language in either the divorce judgment or the Agreement to this effect. Ms. Delesdernier further argues the trial court erred in allowing parole evidence to determine the intent of the parties regarding the CRPPA Pension and the life insurance policy. She maintains that the Agreement is unambiguous and, therefore, the trial court should not have *599 considered extrinsic evidence to ascertain the intent of the parties. Ms. Delesdernier finally contends that even considering the inadmissible parole evidence, the trial court erred in finding there was an agreement outside the community property settlement wherein she waived her right to the CRPPA Pension.
In its October 12, 2011 judgment, the trial court found that Ms. Delesdernier was aware of the CRPPA Pension at the time she entered into the community property settlement agreement and that she “acknowledged a complete liquidation |17of community assets and released and discharged Mr. Delesdernier from future community property claims.” It further determined that Ms. Delesdernier knowingly agreed to waive her interest in the CRPPA Pension in exchange for the $250,000 term life insurance policy.
In the Agreement, the parties agreed Ms. Delesdernier would receive, among other things, the marital home and most of the property therein; various properties; a $250,000 term life insurance policy on Mr. Delesdernier’s life; a $10,000 life insurance policy on her life; and a 1981 Mercedes. Mr. Delesdernier was to receive, among other things, certain properties; his retirement account with the Crescent River Port Pilot’s HR-10 Retirement Plan; various stock, including one share of Crescent River Port Pilots Association stock; and a 1982 Porsche.
Paragraph eight of the Agreement stated:
Mark and Vinca further agree that they have hereby accomplished a complete liquidation of the community of acquets and gains formerly existing between them, and they do accordingly, hereby mutually release and forever discharge each other from any and all further claims and demands and any and all further accountings between them. It is the intention of the parties that henceforth there shall be, as between the, only such rights and obligations as are specifically provided for in this agreement, and the parties acknowledge that the allocation made to each of them has resulted in each party’s [sic] receiving an equal share of the community property-
The Louisiana Supreme Court has explained that general divestiture language does not necessarily divest a non-employee spouse of her right to her employee spouse’s pension when the community property settlement agreement does not expressly address the employee spouse’s pension. The question of whether the agreement divests the non-employee spouse of any community property rights in the pension depends on the intent of the parties. Jennings v. Turner, 01-681 (La.11/28/01), 803 So.2d 968, 965.
[18Both parties agree that the Agreement does not specifically mention the CRPPA Pension. Ms. Delesdernier argues that because the Agreement does not mention the CRPPA Pension, it is still community property that is subject to partition. Mr. Delesdernier maintains that the parties discussed the CRPPA Pension prior to executing the Agreement and agreed Ms. Delesdernier would accept a $250,000 term life insurance policy in lieu of the pension. The issue of whether a pension was considered in a property settlement is a question of fact and the fact-finder is afforded much discretion. Robinson v. Robinson, 99-3097 (La.1/17/01), 778 So.2d 1105,1119.
Whether the divestiture language in the Agreement divested Ms. Delesdernier of her right to the CRPPA Pension depends on the parties’ intent.
The community property settlement agreement between Mr. Delesdernier and *600 Ms. Delesdernier is in the nature of a contract. Therefore, in interpreting the provisions of the Agreement, general rules of contract interpretation apply. See Walker v. Walker, 05-879 (La.App. 5 Cir. 3/28/06), 927 So.2d 468, 471. Louisiana Civil Code article 2046 provides that “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” Under Louisiana Civil Code article 3076, which provides a supplementary rule of construction governing compromise agreements, “[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.”
In determining those matters the parties intended to settle, we must consider the Agreement as a whole and in light of attending events and circumstances. Ortego v. State, Dept. of Transp. and Development, 96-1322 (La.2/25/97), 689 So.2d 1358, 1363. The meaning and intent of the parties to a compromise is usually determined from the four corners of the agreement, and extrinsic or parole 113evidence is inadmissible to explain or contradict the terms of the agreement. Id. However, when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Id., 689 So.2d at 1363-64, citing Moak v. American Automobile Ins. Co., 242 La. 160, 134 So.2d 911 (1961). Accordingly, we do not find the trial court erred in considering parole evidence to determine the intent of Mr. De-lesdernier and Ms. Delesdernier in con-fecting the Agreement.
Mr. Delesdernier testified that he and his attorney discussed issues relating to the community property settlement. He provided documentation to his attorney regarding his CRPPA Pension, which was subsequently shared with Ms. Deles-dernier’s attorney. Mr. Delesdernier further stated he discussed his CRPPA Pension with both his attorney and Ms. Delesdernier. He indicated Ms. Deles-dernier was concerned about the CRPPA Pension because she would not necessarily benefit from the pension because he was not yet vested in the pension, and if he died or stopped working before reaching retirement, she would receive nothing.[12] According to Mr. Delesdernier, Ms. Delesdernier suggested that she receive an insurance policy in lieu of the CRPPA Pension.
Ms. Delesdernier testified that she was represented by counsel at the time of the Agreement. She stated she entered into the Agreement fully and voluntarily after being advised of her rights regarding community property. She admitted there were settlement discussions prior to the Agreement being signed. She stated she knew there were two different retirement plans, the CRPPA Pension and the HR-10 retirement. Ms. Delesdernier indicated she was aware that Mr. Delesdernier did not have the years of service required for retirement and knew that if he died, she would not be able to collect benefits under the CRPPA Pension. 120When asked, she agreed that this was the reason she wanted Mr. Delesdernier to purchase the life insurance policy.
Based on the record, we do not find the trial court was manifestly erroneous in finding the parties intended Ms. Delesder-nier to have a $250,000 life insurance poli *601 cy on Mr. Delesdernier’s life in lien of the CRPPA Pension at the time of the Agreement and, thus, finding the CRPPA Pension was no longer community property subject to partition under a petition for supplemental partition.

DECREE

For the reasons above, we affirm the trial court’s August 31, 2011 judgment finding Mr. Delesdernier in arrearages for spousal support from July 1986 through August 2011. We amend the trial court’s award of arrearages from $596,168 to $518,738, upon finding Ms. Delesdernier failed to prove the value of the replacement vehicle owed under the support judgment from July 1986 through July 1998. We further affirm the trial court’s October 12, 2011 judgment finding the CRPPA Pension was not subject to partition. Each party is to bear his own cost for this appeal.

AUGUST 31, 2011 JUDGMENT AMENDED AND AFFIRMED AS AMENDED; OCTOBER 12, 2011 JUDGMENT AFFIRMED

. After both judgments were rendered and notices of appeal were filed, Ms. Delesdernier passed away and her two children, Mark De-lesdemier. III, and Michael Delesdernier, were substituted as parties.

. Child support was not an issue because all three children had reached the age of majority at the time of the divorce.

.Ms. Delesdernier was declared to be an unavailable witness. As such, the parties agreed to use her November 22, 2010 deposition testimony in lieu of live testimony at the hearings on spousal support arrearages and supplemental partition of community property-

. A spousal support obligation terminates by operation of law upon the death of either party. La. C.C. art. 115. In this case, Ms. Delesdernier passed away on October 28, 2011. The judgment ordering termination of spousal support was rendered on August 31, 2011. Thus, only two months of spousal support are at issue.

. Prior to June 25, 1984, an action for alimony arrearages was subject to a three-year prescriptive period under La. C.C. art. 3538. On June 25, 1984, the same date as the divorce judgment ordering Mr. Delesdernier to pay spousal support, La. C.C. art. 3497.1 was enacted and extended the prescriptive period for spousal support arrearages to five years. Acts 1984, No. 147, § 1.

. Mr. Delesdernier contends the trial court found he paid a total of $380,500 over the past 24 years. Mr. Delesdernier asserts that if he owed $2,700 every month, he owed a total of $815,400. Applying the law of impu *595 tation, Mr. Delesdernier maintains the $380,500 he paid covered the full amount of spousal support through 1998. Although we question the accuracy of these calculations, the calculations are irrelevant to our analysis.

. Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party who justifiably relied upon such conduct and changed his position to his detriment as a result of such reliance. In re Succession of Bailey, 11-147 (La.App. 5 Cir. 11/29/11), 82 So.3d 322, 326.

. We further note that even if we were to consider the merits of an equitable estoppel claim, it would fail. Mr. Delesdernier has failed to show that his legal obligation, which remained in effect until modified or terminated by a court, changed in any way as the result of any reliance on Ms. Delesdernier’s conduct, or that his reliance was justified. See McManus v. McManus, 428 So.2d 854, 858 (La.App. 1st Cir.1983).

. The record does not contain any evidence as to what month in 1998 the vehicle was purchased. However, the parties seem to agree the vehicle was purchased in August 1998.

. Ms. Delesdernier provided a breakdown of arrearages owed as follows: $434,900 for the underpayment of the $2,700 per month owed from July 1986 through August 2011, and $161,268 for the failure to pay for a replacement vehicle from July 1986 through August 2011. Adding these two figures together equals $596,168, which is the amount the trial court awarded.

.$545 per month for 145 months from July 1986 through July 1998

. At the time of the agreement, Mr. Deles-dernier had 19 years in the system, but needed 25 years to retire.