Judge Rosemary Ledet
This is a tort case arising out of an automobile accident. The trial court found the plaintiff, Brenda Gaines, solely at fault in causing the accident due to her failure to yield. Ms. Gaines appeals, contending that the trial court erred in failing to find the defendant, Laura Wilson, solely at fault due to her improperly changing lanes. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of a two-vehicle accident that occurred on November 5, 2014, at approximately 5:30 p.m., in the vicinity of the eastbound I-10 exit ramp onto Chef Menteur Highway ("Chef Menteur") in New Orleans, Louisiana. Claiming personal injuries and property damage to the rental car that she was driving, Ms. Gaines sued, among others, the driver of the other vehicle, Ms. Wilson.[1] In her petition, Ms. Gaines averred that the accident occurred as follows:
• [Ms. Gaines] was driving a [rented] 2015 Kia Soul automobile in an eastbound direction, in the right lane of travel of Chef Menteur Highway, near the intersection of Reynes Street in New Orleans.
*1012 • Suddenly and without warning, while driving a 1994 Mazda Protege automobile, Laura Wilson executed a U-turn from westbound Chef Menteur Highway at Reynes Street, crossed over the left and center eastbound lanes, and crossed into the far right eastbound lane occupied by plaintiff, resulting in a collision with plaintiffs vehicle ...
A one-day bench trial was held in this matter. From the trial testimony and evidence, it is clear that Chef Menteur is a major highway with three lanes in each direction-eastbound and westbound-separated by a median with turning lanes. It is also clear that the I-10 exit ramp merges into the right eastbound lane of Chef Menteur. Approaching that merger, the right eastbound lane is bordered on the left by a solid white line.[2] The right eastbound lane, however, was not a protected lane dedicated to traffic merging from I-10 onto Chef Menteur.
At trial, the two drivers were the principal witnesses.[3] The drivers shared some similarities: both were in their seventies; both were en route to their homes, which were located nearby, when the accident occurred; and both were familiar with the area where the accident occurred. Both drivers testified that the accident occurred in the right eastbound lane of Chef Menteur. Each driver's version of the accident, however, was different.
According to Ms. Gaines, when the accident occurred, she had exited the I-10 exit ramp to Chef Menteur and had fully cleared the exit ramp. Ms. Gaines did not recall whether there was a yield sign at the end of the I-10 exit ramp, and she believed that she had no duty to yield to traffic in the right eastbound lane of Chef Menteur. Nonetheless, she testified, before merging into that lane, she looked and observed no traffic in that lane. She indicated that it was still daylight when the accident occurred and that there was no impediment blocking her view of eastbound traffic. When asked whether she knew where Ms. Wilson came from, Ms. Gaines testified that, "[w]hen I saw Laura Wilson and her car, it was into my car." Ms. Gaines further testified that after the accident, Ms. Wilson's car was located in the right eastbound lane. Ms. Gaines described the damage to Ms. Wilson's vehicle as being on the passenger side front and back door, and the damage to her rental vehicle as being on the front driver's corner bumper and fender by the headlight.
According to Ms. Wilson, she was returning home from picking up food at Lucky Jean Seafood ("Lucky"), when the accident occurred. When she left Lucky, which was on the westbound side of Chef Menteur, she made a U-turn to return *1013 home. After she made the U-turn, she pulled into the right eastbound lane of Chef Menteur-the lane closest to the I-10 exit ramp. She lived on the right side of Chef Menteur; she intended to remain in the right lane until she made a right turn to go home. Ms. Wilson testified that she remained in the right lane from the time she made a U-turn until the time of the impact. According to Ms. Wilson, Ms. Gaines "hit me from the right as I passed, because I already passed her." Ms. Wilson testified that there was a big yield sign facing motorists coming off the I-10 exit ramp.
The trial court found that Ms. Gaines was solely at fault for causing the accident and rendered judgment dismissing her suit. The trial court also issued the following written reasons for judgment:
Mrs. Gaines initially testified that there was no "yield" sign directing vehicles coming off the eastbound I-10 exit ramp at Chef Mentuer Highway. After some cross examination, she expressed less certainty on this issue, saying that she did not remember.
Mrs. Wilson testified emphatically that there was a "yield" sign for vehicles coming off the ramp, "a big one." The court credits Mrs. Wilson's testimony.
Mrs. Gaines did not see Mrs. Wilson's vehicle until the impact. Had she checked the right lane of traffic just before merging onto Chef Mentuer Highway from the ramp, she would have had an opportunity to observe Mrs. Wilson's vehicle approaching. Mrs. Gaines is at fault for this accident.
This appeal followed.
DISCUSSION
As noted at the outset, Ms. Gaines' contention is that the cause of the accident was not her failure to yield, but Ms. Wilson's improper lane change. She cites as the controlling standard of care La. R.S. 32:79.[4] Ms. Wilson counters that the trial court correctly concluded that the cause of the accident was Ms. Gaines' failure to yield. She cites as the controlling standard of care as La. R.S. 32:123(D).[5]
Standard of review
The manifest error standard of review governs this court's review of a trial court's factual findings, including its findings of liability. Watson v. Hicks , 15-0046, 15-0047, 15-0048, pp. 6 (La. App. 4 Cir. 5/27/15), 172 So.3d 655, 663 (citing *1014 Zito v. Advanced Emergency Med. Servs., Inc. , 11-2382, pp. 4-5 (La. 5/8/12), 89 So.3d 372, 375 ).[6] To reverse a trial court's factual finding, a reviewing court must review the record in its entirety and make the following two determinations: (i) a reasonable factual basis does not exist for the factual finding; and (ii) the record establishes the factfinder is clearly wrong or manifestly erroneous. Bonin v. Ferrellgas, Inc. , 03-3024, pp. 6-7 (La. 7/2/04), 877 So.2d 89, 95 (citing Stobart v. State through Dep't of Transp. and Dev. , 617 So.2d 880, 882 (La. 1993) ).
It is well-settled that "the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." Stobart , 617 So.2d at 882. "[R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." Id. Nonetheless, when "documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness' story, the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination." Zito , 11-2382 at p. 5, 89 So.3d at 375 (citing Stobart , supra ; Rosell v. ESCO , 549 So.2d 840 (La. 1989) ).
"[A]n appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently." Bonin , 03-3024 at p. 7, 877 So.2d at 95 (citing Ambrose v. New Orleans Police Dept. Ambulance Serv. , 93-3099 (La. 7/5/94), 639 So.2d 216, 221 ). When two permissible views of the evidence exist, "the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Bonin , supra ; Rosell , 549 So.2d at 844. Emphasizing these principles, the Louisiana Supreme Court in Menard v. Lafayette Ins. Co. , 09-1869, pp. 21-22 (La. 3/16/10), 31 So.3d 996, 1011, stated as follows:
Rarely do we find a reasonable basis does not exist in cases with opposing views. We note it is not hard to prove a reasonable basis for a finding, which makes the manifest error doctrine so very difficult to breach, and this is precisely the function of the manifest error review. A reviewing court only has the "cold record" for its consideration while the trier of fact has the "warm blood" of all the litigants before it. This is why the trier of fact's findings are accorded the great deference inherently embodied in the manifest error doctrine. So once again we say it should be a rare day finding a manifest error breach when two opposing views are presented to the trier of fact.
Id. (emphasis in original).[7] With these principles in mind, we address the issue presented by this appeal.
*1015 Improper lane change theory
Ms. Gaines contends that no reasonable factual basis exists for the trial court's finding that her inability to testify as to the presence of a yield sign was related to the accident. She further contends that the evidence presented at trial established that the accident occurred so far east of the I-10 exit ramp that the yield sign was irrelevant. She contends that by the time the accident occurred, she had "successfully merged onto Chef Hwy without incident," and Ms. Wilson caused the accident by crossing the solid line and colliding into her vehicle. We find this argument unpersuasive.
Ms. Wilson consistently testified that she was traveling in the right eastbound lane of Chef Menteur for quite some distance before the accident. Ms. Gaines acknowledged that she never saw Ms. Wilson's vehicle until the accident occurred; thus, Ms. Gaines could not testify about which of the three lanes of eastbound Chef Menteur Ms. Wilson's vehicle was travelling in before the accident. Nor could she testify as to whether Ms. Wilson had changed lanes.
In an attempt to establish that the accident occurred so far east of the I-10 exit ramp that Ms. Wilson must have changed lanes, Ms. Gaines cites a Google Maps aerial photograph on which Ms. Wilson placed a dot depicting the location of the accident.[8] Ms. Wilson placed the dot on the Google Maps photograph in her pre-trial deposition and confirmed at trial that this was the location of the accident. According to Ms. Gaines, Ms. Wilson's placement of the dot established that the location of the accident was considerably east of the intersection of the I-10 exit ramp and Chef Menteur. Ms. Gaines also cites Ms. Wilson's testimony that she was concerned about going into an intersection controlled by a traffic light, which was considerably east of the I-10 exit ramp. According to Ms. Gaines, the traffic light was at the intersection of Dale Street and Chef Menteur, which was located another block east of the I-10 exit ramp.
Under Ms. Gaines' version of the accident, Ms. Wilson was solely at fault because she changed lanes improperly when it was unsafe for her to do so given that Ms. Gaines had successfully merged into the eastbound right lane. The trial court rejected this version of the accident and determined that Ms. Gaines was solely at fault in failing to yield the right of way. The record supports the trial court's factual finding.[9] Ms. Wilson's testimony that she never changed lanes provided the trial court with a reasonable basis for concluding that Ms. Gaines was solely at fault for *1016 failing to yield. Ms. Wilson never contradicted her testimony that she remained in the right eastbound lane of Chef Menteur from the time she made a U-turn until the time of the impact.
Considering the testimony and evidence in this case, we conclude that the trial court's factual finding that Mr. Gaines was solely at fault in causing the accident is supported by the record, is reasonable, and is not manifestly erroneous. This is not the rare occasion "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, [and] the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." Menard , 09-1869 at p. 15, 31 So.3d at 1008. To the contrary, this case involves a reasonable factual conclusion that Ms. Wilson was travelling at all pertinent times in the right eastbound lane of Chef Menteur when the vehicle she was driving was struck on the right passenger side by the rental vehicle Ms. Gaines was driving and that the sole cause of the accident was Ms. Gaines' failure to yield.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

Ms. Gaines also named as defendants Ms. Wilson's insurer, State Farm Mutual Automobile Insurance Company, and Ms. Gaines' uninsured motorist insurer, Esurance Insurance Company. For ease of discussion, we refer to Ms. Wilson as the sole defendant.

The purpose of a solid white line is to caution drivers from changing lanes. See Brewer v. J.B. Hunt Transp., Inc. , 09-1408, p. 20, n. 17 (La. 3/16/10), 35 So.3d 230, 244 (quoting Louisiana Department of Public Safety and Corrections, Louisiana Driver's Guide Classes "D" and "E" (1/09), which states that "[s]ingle Solid White Lines indicate that movement from lane to lane is hazardous. The wider the line, the greater the hazard. You may cross a solid white line only with great care").

The only other witness called to testify at trial was Ms. Gaines' son, Glenn Gaines. Mr. Gaines testified that his mother called him after the accident occurred to come to the scene of the accident. He was present when the investigating officer arrived. According to Mr. Gaines, Ms. Wilson made the following res gestae comment when the officer handed her a ticket: "I knew you were going to give me a ticket." He also testified that she threw the ticket to the ground. The trial court noted, for the record, that "the police officer's opinion about who was at fault for the accident is not going to weigh into my-everything is going to come from the witness stand."

La. R.S. 32:79 provides as follows:
Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
(2) The department may erect signs directing slow moving traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction, and drivers of vehicles shall obey the directions of such signs.

La. R.S. 32:123(D) provides as follows:
The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right-of-way to any pedestrian legally crossing the roadway on which he is driving, and to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard.

The manifest error standard likewise governs a trial court's findings on the allocation of fault. Watson, 15-0046, 15-0047, 15-0048 at p. 7, 172 So.3d at 663-64 (citing Beggs v. Harrah's New Orleans Casino , 14-0725, pp. 13-14 (La. App. 4 Cir. 1/21/15), 158 So.3d 917, 925 ).

See also Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC , 14-2592, p. 9 (La. 12/8/15), 193 So.3d 1110, 1116 (citing Menard , supra ) (noting that "an appellate court on review must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently"); Purvis v. Grant Par. Sch. Bd. , 13-1424, p. 6 (La. 2/14/14, 6), 144 So.3d 922, 927 (emphasizing "the importance of deferring to the trier of fact's findings, 'as the trier of fact is not disadvantaged by the review of a cold record,' and 'is in a superior position to observe the nuances of demeanor evidence not revealed in a record' ") (quoting Adkins v. Huckabay , 99-3605, p. 16 (La. 2/25/00), 755 So.2d 206, 215 ).

A general explanation of Google Maps' satellite view is set forth in Wikipedia as follows:
Google Maps' satellite view is a "top-down" or "birds eye" view; most of the high-resolution imagery of cities is aerial photography taken from aircraft flying at 800 to 1,500 feet (240 to 460 m), while most other imagery is from satellites. Much of the available satellite imagery is no more than three years old and is updated on a regular basis. Google Maps uses a close variant of the Mercator projection, and therefore cannot accurately show areas around the poles.
Google Maps, Wikipedia, The Free Encyclopedia < http://en.wikipedia.org/wiki/Google Maps (Last visited February 22, 2108).

See Ryans v. Empire Fire & Marine Ins. Co. , 357 So.2d 853, 856 (La. App. 4th Cir. 1978) (Gulotta, J., concurring) (noting that " '[t]he only basis upon which the bus driver could have been found negligent would be a factual finding that the bus driver, while traveling in the center lane, pulled into the right lane in front of the truck as the truck was entering the expressway. The trial judge made no such finding of fact.' ").