Judge Rosemary Ledet
This is a spousal support dispute. A former wife, Anne Dickerson (formerly Anne Dickerson Waites), filed a motion seeking spousal support arrearages against her former husband, Dr. Thad Waites.[1] Dr. Waites responded with his own motion, seeking either to terminate his obligation to pay support based on alleged extrajudicial agreements or, in the alternative, a $66,000.00 credit for accelerated spousal support payments he allegedly made between August 1993 and May 1996 when Ms. Dickerson attended law school.[2] From the trial court's judgment denying both parties' motions and granting Dr. Waites' alternative request for a credit, Ms. Dickerson appeals. Finding no manifest error in the trial court's judgment, we affirm. We deny Ms. Dickerson's peremptory exception of prescription.
FACTUAL AND PROCEDURAL BACKGROUND
The facts in this case are undisputed with one exception-whether Dr. Waites made the accelerated spousal support payments between 1993 and 1996. Dr. Waites and Ms. Dickerson married in 1971; they divorced in 1984.[3] Ancillary to the divorce, the parties entered into a community property settlement agreement (the "Settlement"). The Settlement was incorporated into their divorce decree. Included in the Settlement was an agreement by Dr. Waites to pay Ms. Dickerson spousal support in the amount of $1,000.00 a month for the rest of her life.[4] The Settlement, *542 however, provided that Dr. Waite's spousal support obligation would be terminated if any of the following three events occurred: (i) Ms. Dickerson remarried; (ii) Dr. Waites became disabled; or (iii) Ms. Dickerson agreed to the termination "at any time."[5]
For almost three decades (from June 1984 to January 2013), Dr. Waites complied with his obligation to pay the spousal support obligation on a monthly basis. During this time, Dr. Waites remarried; Ms. Dickerson did not. In late December 2012, Dr. Waites' second wife, Gerry Waites ("Mrs. Waites"), sent Ms. Dickerson an undated, handwritten note (the "Note"), which stated as follows:
Retirement time has arrived & we are revising budget. I am hoping you will agree to a decrease in your check to $500 a month through June 2013 & then eliminate it completely. I know you must be planning a new lifestyle if you haven't done so already. Time has gone by so quickly!
Hope your year has been a good one & 2013 the same.
Although Ms. Dickerson failed to respond to the Note, Dr. Waites implemented the revised payment plan set forth in the Note. Starting in January 2013, he lowered the monthly payments to $500 per month. For six months (from January to June 2013), he paid only $500.00 per month. Starting in July 2013, he ceased making any spousal support payment.
In September 2016, over three years after the payments ceased, Ms. Dickerson filed a "Motion to Determine and Make Executory Past-Due Spousal Support and Payments." In her motion, she sought not only the past due payments but also attorneys' fees and costs. In support of her motion, Ms. Dickerson presented her own affidavit in which she attested to the receipt of the Note and to Dr. Waites' unilateral implementation of the revised payment plan set forth in the Note. She further attested that she never agreed to Dr. Waite's unilaterally ceasing the spousal support payments.
In response, Dr. Waites filed a "Motion to Enforce Extrajudicial Agreement Concerning Spousal Support; Alternatively, Motion for Credit against Future Support." In support of his motion, Dr. Waites submitted his own affidavit in which he attested to the following:
In 1993, Anne [Dickerson] contacted me by telephone, to advise me of her intention to enroll in law school. At the time of our divorce, she had expressed her intention to become completely self-sufficient, so that she would no longer require any support from me, and she felt that obtaining a law degree would help her in that endeavor. At that time, Anne [Dickerson] asked if I would be willing to increase the alimony payments I was making to her from $1,000.00 per month to $3,000.00 per month for the years she was to attend law school. In exchange, she would relieve me of my alimony obligation once she became a self-sufficient practicing attorney.
Based upon the cordial nature of my relationship with Anne [Dickerson] up to that point, my desire to assist with someone's pursuit of higher education, and in reliance upon Anne [Dickerson]'s representations and promises that once she completed law school with my financial assistance and became self-sufficient she would relieve me of my future alimony *543 obligations, I agreed to the increase in alimony payments.
Dr. Waites also submitted the affidavit of Mrs. Waites in which she attested to the following:
As the family bookkeeper, I primarily wrote the monthly alimony checks to Anne [Dickerson]. The check amount went from $1,000.00 per month to $3,000.00 per month beginning in August, 1993, and those continued until Thad [Waites] received notice from Anne [Dickerson] of her graduation from Loyola Law School in 1996. At that time, the amount of the alimony checks were reduced to $1,000.00 per month.
On January 24, 2017, a hearing was held on the motions. At the hearing, three witnesses testified-Ms. Dickerson, Mrs. Waites, and Dr. Waites. The testimony of the parties at the hearing centered on two alleged extra-judicial agreements to terminate or modify Dr. Waites' spousal support obligation:[6]
• An alleged 1993 agreement that Dr. Waites would pay an extra $2,000.00 a month during the time that Ms. Dickerson attended law school that would eventually allow Dr. Waites to cease payments when Ms. Dickerson became self-sufficient at some point in the future (the "1993 Agreement"); and
• An alleged 2013 agreement that Dr. Waites would pay one-half of the support obligation ($500.00) for six months and then entirely discontinue paying it, which was the revised payment plan set forth in the Note (the "2013 Agreement").
The gist of Ms. Dickerson's testimony was that the parties never entered into any extra-judicial modification of the agreement that Dr. Waites would pay her spousal support for the rest of her life. Ms. Dickerson confirmed that neither of the other grounds for terminating the spousal support obligation had occurred-she had not remarried, and Dr. Waites had not become disabled.
Ms. Dickerson testified regarding her attending law school. In the fall of 1993, she enrolled in Loyola Law School as a day school student; in the spring of 1996, she graduated from law school. In April 1997, she obtained her law license. She did not work full time while in law school. When asked how she afforded law school, Ms. Dickerson replied that she "had about $20,000 left over from the sale of [her house]," that she "borrowed the maximum amount that was available in student loans," and that she lived in a room at a friend's house that she rented. At the time of the hearing, she stated that she was still paying off her student loans. She, however, was unable to identify any of the lenders from whom she obtained the loans.
Ms. Dickerson denied ever seeking additional support payments from Dr. Waites to attend law school; indeed, she testified that "[i]f I thought [Dr. Waites] was available *544 for extra funds, I would have gotten him to bail me out so I didn't have to sell my house." According to Ms. Dickerson, during the time she was in law school, Dr. Waites paid her only the agreed upon spousal support of $1,000.00 a month.
Both defense counsel and the trial court judge questioned Ms. Dickerson regarding the affidavits from Dr. Waites and Ms. Waites stating that accelerated support payments of $2,000.00 extra per month were made while Ms. Dickerson was in law school. In response to defense counsel's question, Ms. Dickerson testified that if Dr. Waites were to testify that he paid her an additional $2,000.00 a month between August of 1993 and June of 1996, he would be lying. Similarly, the trial court judge asked Ms. Dickerson the following question: "But, as you sit here today, you're saying that you have not received, during the time that you were in law school, that additional $2,000[.00] a month?" Ms. Dickerson replied "No, Judge. I don't-that didn't happen." Ms. Dickerson also testified that she would be "very surprised" if Dr. Waites made that statement. Likewise, Ms. Dickerson testified that it would be incorrect if Mrs. Waites were to testify that she had personal knowledge that Dr. Waites paid Ms. Dickerson an additional $2,000.00 a month during the time she was in law school. According to Ms. Dickerson, the accelerated payments were never made.
As to the 2013 Agreement, Ms. Dickerson identified the Note that she received from Mrs. Waites at the end of 2012 stating that Dr. Waites intended to stop paying spousal support because he was retiring. Thereafter, she testified that her support payments were reduced to $500.00 a month for six months and then ceased. As a result, in 2013, Ms. Dickerson received a total of $2,500.00 in support, as indicated by the revised payment schedule in the Note; however, under the terms of the Settlement, she was owed $12,000.00. At the time of the hearing, the total amount of missed payments due under the Settlement was calculated to be $46,500.00.
Both Dr. Waites and Mrs. Waites testified, consistent with their affidavits, that Dr. Waites agreed, pursuant to the 1993 Agreement, to pay-and actually did pay-Ms. Dickerson an extra $2,000.00 a month during the time that she attended law school. Dr. Waites explained that he understood the accelerated payments to be advance alimony payments, not gifts. He further explained that he took a tax deduction for the full amount of the additional support payments that he made to Ms. Dickerson; he included the accelerated payments on his federal tax returns for the years 1993 to 1996 as alimony payments.
Dr. Waites, however, acknowledged that he had no bank records, tax returns, cancelled checks, or any other documentary evidence to substantiate his testimony that he made the accelerated support payments to Ms. Dickerson. Dr. Waites described in detail his search for such records, which included contacting the Internal Revenue Service, going to three different banks, and talking to his accountant. None of them retained records dating that far back. During the month before the hearing, he also searched on a computer from the 1990's for such records. Again, however, he was unable to find such records.
At the close of the hearing, the trial court ruled that Dr. Waites' on-going obligation to pay $1,000.00 in monthly spousal support was not terminated by either the 1993 Agreement or the 2013 Agreement. In so ruling, the trial court orally reasoned that "from the [Settlement] agreement itself, particularly paragraph *545 E,[7] there's no question that the support to Ms. Dickerson was or could have been terminated only by Ms. Dickerson;" the trial court found that Ms. Dickerson had not agreed to terminate the spousal support. Moreover, the trial court cited the settled principle that "[m]ere acquiescence in the obligor's failure to pay the full amount of support does not constitute a waiver." Delesdernier , 12-38, p. 10, 95 So.3d at 595.
The trial court, however, found Dr. Waites' testimony, which was corroborated by Mrs. Waites' testimony, that he made the accelerated support payments from 1993 to 1996 was credible. The trial court thus determined that Dr. Waites was entitled to a $66,000.00 credit for those payments. To implement the credit, the trial court, in its March 14, 2017 judgment,[8] ordered as follows:
[Dr. Waites] is hereby given credit for sixty-six thousand dollars ($66,000.00) in advance support spousal payments made to Anne Dickerson Waites during her matriculation at Loyola University Law School; and that said credit shall apply to all spousal support payments presently claimed by Anne Dickerson Waites to be owing to her in the amount of forty-six thousand five hundred dollars ($46,500.00); and that Thad Fulton Waites shall have a remaining credit of nineteen thousand five hundred dollars ($19,500.00) against future spousal support payments owing to Anne Dickerson Waites beginning with spousal support owing for the month of February 2017, so that Thad Fulton Waites shall not owe any spousal support to Anne Dickerson Waites beginning with February 2017 and running each consecutive month through August 2018; and that Thad Fulton Waites shall only owe Anne Dickerson Waites the balance of five hundred dollars ($500.00) for the month of September 2018; and that Thad Fulton Waites shall resume monthly spousal support payments for the full amount of one thousand dollars ($1,000.00) per month to Anne Dickerson resuming in the month of October 2018.
This appeal by Ms. Dickerson followed.[9]
PEREMPTORY EXCEPTION OF PRESCRIPTION
On appeal, Ms. Dickerson filed a peremptory exception of prescription pursuant to La. C.C.P. art. 2163.[10] Ms. Dickerson contends that Dr. Waites' claim that he is entitled to a credit of $66,000.00 is prescribed because it is based on payments that allegedly were made more than twenty years ago-from 1993 to 1996. She contends that it is unnecessary to classify the nature of the obligation that Dr. Waites is claiming because "under Louisiana law the longest prescriptive period for *546 any obligation is 10-years after the obligation becomes due." See La. C.C. art. 3499 (providing that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years").
Even assuming, as Ms. Dickerson contends, that Dr. Waites' offset claim is prescribed, a prescribed claim can still be used as an offset or a defense to a claim provided "it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff." La. C.C.P. art. 424.[11] Such is the case here.
In a variety of settings, the jurisprudence has applied La. C.C.P. art. 424 to recognize a prescribed cause of action as an offset or a defense. See Succession of Watkins , 16-0356 (La. App. 4 Cir. 12/7/16), 206 So.3d 1237 (upholding offset of amounts owed to an heir with damages he caused to estate property); Succession of Feingerts , 14-0140 (La. App. 4 Cir. 3/18/15), 162 So.3d 1215 (upholding a trial court's ruling offsetting amounts owed to an heir with amounts the heir owed to the decedent); Picard v. Picard , 97-1528, p. 5 (La. App. 3 Cir. 4/1/98), 708 So.2d 1292, 1295, n. 2 (collecting cases). Thus, Ms. Dickerson's peremptory exception of prescription is denied.
STANDARD OF REVIEW
"The trial court is vested with much discretion in alimony matters and its findings may not be disturbed absent manifest error." Delesdernier , 12-38, p. 12, 95 So.3d at 596 ; see also Pearce v. Pearce , 348 So.2d 75, 78 (La. 1977) (observing that "[i]n the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses"). This court recently summarized the manifest error standard of review as follows:
To reverse a trial court's factual finding, a reviewing court must review the record in its entirety and make the following two determinations: (i) a reasonable factual basis does not exist for the factual finding; and (ii) the record establishes the factfinder is clearly wrong or manifestly erroneous.
It is well-settled that "the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." ...
"[A]n appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently." When two permissible views of the evidence exist, "the factfinder's choice between them cannot be manifestly erroneous or clearly wrong."
Gaines v. Wilson , 17-0895, pp. 5-6 (La. App. 4 Cir. 3/21/18), 240 So.3d 1010, 1014 (internal citations omitted).
DISCUSSION
On appeal, Ms. Dickerson's argument is essentially that the trial court's judgment awarding Dr. Waites the credit is unreasonable and, thus, manifestly erroneous. See Rachal v. Rachal , 35,074, p. 2 (La. App. 2 Cir. 10/12/01), 795 So.2d 1286, 1288 (observing that "[u]nder the manifest error *547 standard of review, the only issue to be resolved by the appellate court is whether the trial court's conclusion was a reasonable one"). Ms. Dickerson's argument that the trial court's judgment was unreasonable can be divided into the following three components: (i) La. C.C.P. art. 3946(A) ; (ii) the jurisprudential standard for establishing entitlement to a credit; and (iii) the facts of this case.[12] We separately address each component.
La. C.C.P. art. 3946(A)
A claim for past-due spousal support under La. C.C.P. art. 3946(A)"is basically a suit for a money judgment and is governed generally by the procedures applicable to other suits for money judgment." Frank A. Maraist, 1A La. Civ. L. Treatise, CIVIL PROCEDURE-SPECIAL PROCEEDINGS , § 8.2 (2018). Although the jurisprudence has construed La. C.C.P. art. 3946(A) as disallowing a trial court to consider equitable arguments, it has recognized that a trial court is allowed to recognize an obligor spouse's right to a "credit for any payments made." Cradeur v. Cradeur , 08-1463, p. 5 (La. App. 3 Cir. 5/6/09), 10 So.3d 1252, 1255 ; Vaughan v. Vaughan , 415 So.2d 483, 484-85 (La. App. 1 Cir. 1982) (noting that "if the defendant had shown he had in fact paid some amount of child support he would be entitled to a credit in that amount").
The burden of proving a credit against a support payment arrearage is on the party asserting entitlement to the credit. See Vallaire v. Vallaire , 433 So.2d 315 (La. App. 1st Cir. 1983) ; Lynch v. Lynch , 422 So.2d 703 (La. App. 3d Cir.1982) ; See also Brouillette v. Nat'l Remodelers & Rebuilders, Inc. , 239 So.2d 375, 379 (La. App. 4th Cir. 1970) (observing that "the burden of proving offsets claimed, an affirmative defense, is upon the party asserting such offsets"). Thus, once a recipient spouse establishes a support payment arrearage, the burden shifts to the obligor spouse to prove entitlement to a credit.
In this case, the trial court implicitly found that Ms. Dickerson proved a support payment arrearage totaling $46,500.00 as of January 24, 2016, the date of the hearing. The burden thus shifted to Dr. Waites, as the party claiming entitlement to a credit, to prove that the alleged accelerated payments were made. The trial court found Dr. Waites met his burden.
On appeal, the sole issue Ms. Dickerson raises is whether the trial court was manifestly erroneous in finding that Dr. Waites proved his entitlement to a credit for the accelerated support payments he alleges he made over two decades ago-from 1993 to 1996. See Singleton v. Singleton , 423 So.2d 791, 792 (La. App. 4th Cir. 1982) (observing that the obligor-spouse's "allegation of payment was the issue before the Trial Court").[13]
*548 Jurisprudential Standard for Establishing Entitlement to a Credit
Ms. Dickerson contends that the minimum standard for establishing entitlement to a credit is set forth in two cases- Vaughan , supra , and Singleton, supra. Both of the cited cases, like this case, involved a former spouse's motion to make executory past due support payments under La. C.C.P. art. 3946(A) (formerly La. C.C.P. art. 3945 ).
In Vaughan , the plaintiff, a former wife, testified that the defendant, her former husband, had failed to pay any support for the past three years. When questioned whether he had paid support at all, the defendant replied: " 'I have paid some. I don't have any records. I paid cash, you know. But, I don't know how much it is or when." Vaughan , 415 So.2d at 484. When questioned further as to whether he had any receipts or an estimate of the amount he had paid, the defendant replied in the negative and stated: " 'I haven't paid her anything in the last, I know, in the last year and a half.' " Id. The trial court, however, failed to award the plaintiff the full amount owed.
Finding no evidence that would support granting the defendant a credit, the appellate court in Vaughan reasoned as follows:
Certainly if the defendant had shown he had in fact paid some amount of child support he would be entitled to a credit in that amount. Davis v. Davis , 405 So.2d 594 (La. App. 3d Cir. 1981). However, we find the record void of such evidence. We cannot accept defendant's bald statement that he made "some payment" as evidence sufficient to grant him a credit. Indeed, it would be impossible to do so without knowing how much he had paid. Mrs. Vaughan testified unequivocally defendant had made no payments in the past three years. Unless defendant has some records or other evidence indicating the approximate dates and amounts of the payments he is not entitled to a credit. Elchinger v. Elchinger , 181 So.2d 297 (La. App. 4th Cir. 1965).
Id. , 415 So.2d at 485. The appellate court thus awarded the plaintiff the full amount of past due support.
In Singleton , a former wife, Mrs. Singleton, filed a motion against her former husband, Mr. Singleton, to enforce a $7,350.00 child support arrearage. Although Mr. Singleton acknowledged owing $1,540.00, he claimed a credit of $5,810.00 for his prior support payments. Mr. Singleton's allegation that he had made such payments was the issue before the trial court. Singleton , 423 So.2d at 792. Finding in Mr. Singleton's favor, the trial court awarded Mrs. Singleton only the amount her former husband admitted he owed, $1,540.00, granting his request for a credit. Singleton , 423 So.2d at 792.
Affirming, this court cited Vaughan as standing for the proposition that "when the wife gives credible testimony that supports her claim, the mere 'bald statement' of the husband that he has made 'some payment' is insufficient to rebut the wife's testimony." Singleton , 423 So.2d at 793. Continuing, this court observed as follows:
In the Vaughan case, ... the [wife's] testimony was both credible and unequivocal. In that case, the husband's testimony was uncorroborated; he did not offer other evidence of payments. The absence of either receipts or cancelled *549 checks, and his failure to testify as to times and dates when he made payments made his testimony unworthy of belief. Because the husband would ordinarily have corroborative evidence such as cancelled checks, cash receipts, money order stubs, and in some instances witnesses, his failure to produce corroborative evidence cast doubt on his credibility. In sum, he did not rebut the wife's credible and unequivocal testimony.
Singleton , 423 So.2d at 793-94. Distinguishing Vaughan , we noted that Mrs. Singleton's testimony was not credible and that Mr. Singleton "offered a good deal more proof than a 'bald statement' of payments.' " Id. Finally, we observed that "the question of whether the husband had paid child support is ultimately one of credibility. The Trial Judge chose to believe the husband." Id. We thus affirmed the trial court's judgment granting the former husband a credit as not clearly wrong.
Ms. Dickerson contends that this case is analogous to Vaughan and readily distinguishable from Singleton . Nonetheless, she acknowledges there is one factor that distinguishes this case from Vaughan ; Dr. Waites offered as corroborating evidence the testimony of Mrs. Waites, who testified that she and Dr. Waites paid Ms. Dickerson extra money during law school. Ms. Dickerson, however, emphasizes that Mrs. Waites, like Dr. Waites, failed to present any corroborating proof of extra payments.
Ms. Dickerson also emphasizes that Dr. Waites was unable to state the exact amount of additional payments that he made to her. Although he could not pinpoint an exact commencement and termination date of the payments and thus could not precisely state the exact number of $2,000.00 payments he made, he testified that the payments coincided with her matriculation in law school. He further stated that he started paying the extra $2,000.00 per month from "whatever her beginning date was for law school," and ending "at the end of law school." When questioned by his attorney, Dr. Waites testified that he paid "$2,000[.00] a month for the entire time [Ms. Dickerson] was in law school, but I'm not sure how long that was. It was a three-year period, I think. It was a three-year law school." The trial court, apparently taking judicial notice of the fact, determined that the three-year law school period was 33 months in duration. On that basis, the trial court calculated and awarded a credit of $66,000.00.
Contrary to Ms. Dickerson's contention, we find, as Dr. Waites contends, this case is similar to Singleton . Dr. Waites testified to paying a specific extra amount-$2,000.00 a month-over a specific period of time-Ms. Dickerson's law school matriculation, which was a three-year period from 1993 to 1996. Dr. Waites thus established "the approximate dates and amounts of the payments." Vaughan , 415 So.2d at 485. As Ms. Dickerson acknowledges, Dr. Waites' testimony was corroborated by Mrs. Waites' testimony. Mrs. Waites, who was married to Dr. Waites at the time of the alleged payments, testified that the payments were made. Indeed, Mrs. Waites testified that she was the family bookkeeper who wrote and mailed the monthly checks to Ms. Dickerson. As Dr. Waites emphasizes, Ms. Dickerson testified that she had no questions regarding the character of Dr. Waites or Mrs. Waites.[14]
*550 Ms. Dickerson argues that the Vaughan and Singleton cases impose a requirement that when a recipient spouse establishes a support payment arrearage, the obligor spouse must present corroborating, documentary evidence to prove an entitlement to a credit. This argument is unpersuasive. As Dr. Waites observes, "[t]he only similarity between the present case and Vaughan is that in both cases the recipient [spouse] denied any payments having been made, and no case holds such a statement dispositive as to whether or not a District Court can give credit for payments made." Ultimately, as this court held in Singleton , the determining factor on whether a credit can be given for prior, actual payments is the credibility of the witnesses.[15]
Facts of This Case
At the hearing on the motions, the trial court noted that the issue of whether Dr. Waites was entitled to a credit turned on the credibility of the witnesses. The trial court was presented with diametrically opposed testimony on this issue. Ms. Dickerson not only denied any additional payments were made, but also characterized Dr. Waites' testimony that he made such payments as a lie. Resolving the issue in Dr. Waites' favor, the trial court found Dr. Waites' testimony was credible.[16]
Although Ms. Dickerson acknowledges the deference due a trial court's factual findings, she contends "that deference ends when the court's determinations become unreasonable." She further contends that the trial court's factual finding that Dr. Waites proved his entitlement to the credit is unreasonable in light of the entire record. Given the lack of any documentary evidence corroborating that the alleged additional payments were made, Ms. Dickerson contends that it was necessary for the trial court to focus on the parties' conduct in resolving the issue.
According to Ms. Dickerson, Dr. Waites' conduct belies his claim that the additional payments were made-he continued to make the $1,000.00 a month spousal support payments for about 17 years after she graduated from law school, and he failed to assert a claim for a credit based on the additional payments until after she filed her motion.
The trial court, in resolving this issue, also found that "there was a delay on both sides." Not only did Dr. Waites delay in asserting a right to a credit, but also Ms. Dickerson waited over three years after the payments ceased before filing the motion. Dr. Waites' testimony as to why he continued to pay the spousal support and delayed seeking a credit was that he and Ms. Dickerson "had a very cordial relationship, and [he] continued to pay her." According to Dr. Waites, the parties understood that these payments would reduce his future alimony obligation owed to Ms. Dickerson and would eventually allow Dr. Waites to cease payments altogether once Ms. Dickerson became self-sufficient.
Moreover, the manifest error standard is not "easily broached."
*551 Menard v. Lafayette Ins. Co. , 09-1869, p. 21 (La. 3/16/10), 31 So.3d 996, 1011. Explaining the extreme difficulty in establishing manifest error, the Louisiana Supreme Court in Menard stated as follows:
Rarely do we find a reasonable basis does not exist in cases with opposing views. We note it is not hard to prove a reasonable basis for a finding, which makes the manifest error doctrine so very difficult to breach, and this is precisely the function of the manifest error review. A reviewing court only has the "cold record" for its consideration while the trier of fact has the "warm blood" of all the litigants before it. This is why the trier of fact's findings are accorded the great deference inherently embodied in the manifest error doctrine. So once again we say it should be a rare day finding a manifest error breach when two opposing views are presented to the trier of fact.
Id. , 09-1869, pp. 21-22, 31 So.3d at 1011 (emphasis in original). This is not such a rare case.
As the Louisiana Supreme Court explained in Rosell v. ESCO , 549 So.2d 840, 844-45 (La. 1989), the exception for unreasonable factual findings is limited to the following context:
Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. (internal citations omitted). Such factors are not present here.
Contrary to Ms. Dickerson's contention, the trial court's decision to credit the testimony of Dr. Waites and Mrs. Waites that the additional support payments were made was not manifestly erroneous. Accordingly, we cannot conclude, based on the record of this case, that the trial court was manifestly erroneous in finding that Dr. Waites proved his entitlement to a $66,000.00 credit.
DECREE
For the forgoing reasons, the trial court's judgment is affirmed. Ms. Dickerson's peremptory exception of prescription is denied.
AFFIRMED; EXCEPTION OF PRESCRIPTION DENIED

The motion was filed in the 1984 Civil District Court case in which the parties' divorce judgment was rendered. It was filed pursuant to La. C.C.P. art. 3946(A), which provides as follows:
When a payment of support under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due support determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due support.

In his motion, Dr. Waites contended that he, at Ms. Dickerson's request, paid her an extra $2,000.00 a month, for approximately 35 months (which translated into a total of $70,000.00), during the time that she attended law school. The trial court, however, found that the period during which the payments were made was a total of 33 months (which translated into a total of $66,000.00).

No children were born of the marriage.

The Settlement provided that "[d]uring the third and subsequent years of separation Thad Fulton Waites shall pay Anne Dickerson Waites a sum of one thousand and no dollars monthly." During the first two years following the divorce, the Settlement provided for payment of a higher amount.

Paragraph E of the Settlement provided Ms. Dickerson with the unilateral authority to terminate the spousal support; it stated: "E. This agreement as to support may be terminated at any time by ANNE DICKERSON WAITES."

The general rule is that a judgment ordering spousal support remains in effect until a court modifies or terminates it. See Delesdernier v. Delesdernier , 12-38, p. 10 (La. App. 5 Cir. 5/31/12), 95 So.3d 588, 595 (citing Halcomb v. Halcomb, 352 So.2d 1013, 1016 (La. 1977) ). One exception to the general rule is when the parties have "clearly agreed" to waive or to modify the court-ordered payments. Delesdernier , supra (citing Vallaire v. Vallaire , 433 So.2d 315, 318 (La. App. 1st Cir. 1983) ). "The party asserting the existence of an extrajudicial modification has the burden of proving a clear and specific agreement." Delesdernier , supra (citing Rachal v. Rachal , 35,074, p. 4 (La. App. 2 Cir. 10/12/01), 795 So.2d 1286, 1289 ). "[W]hen the evidence shows the parties have clearly agreed to waive or otherwise modify the court-ordered payments, the court will uphold such an agreement and grant an appropriate credit." Vallaire , 433 So.2d at 317.

As noted elsewhere in this opinion, Paragraph E of the agreement provides Ms. Dickerson with the unilateral authority to terminate the spousal support.

In its judgment, the trial court denied both Ms. Dickerson's "Motion to Determine and Make Executory Past-Due Spousal Support and Payments" and Dr. Waites' "Motion to Enforce Extrajudicial Agreement Concerning Spousal Support."

The trial court rejected Dr. Waites' argument that there was an extra-judicial agreement to terminate the spousal support obligation. Dr. Waites did not file a cross appeal seeking review of that ruling. The issue of his on-going obligation to pay spousal support, thus, is not before us.

La. C.C.P. art. 2163 provides that "[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record."

La. C.C.P. art. 424 provides as follows:
A person who has a right to enforce an obligation also has a right to use his cause of action as a defense.
Except as otherwise provided herein a prescribed obligation arising under Louisiana Law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff....

Ms. Dickerson asserts the following two assignments of error:
1) The district court committed manifest error when it determined that Dr. Waites carried his burden to prove he was entitled to any credit whatsoever, despite the fact that Ms. Dickerson testified that no extra payments were ever made; Dr. Waites could not produce any proof of extra payments; and Dr. Waites' subsequent behavior-continuing to pay Ms. Dickerson periodic support for the next 17 years without ever claiming a set-off-was conduct flatly inconsistent with his testimony.
2) The district court committed manifest error by awarding Dr. Waites a $66,000 credit against $46,500 of court-determined arrearages despite the fact that Dr. Waites could not testify with certainty how much extra support he allegedly paid to Ms. Dickerson more than 20 years ago.

On appeal, Ms. Dickerson does not dispute Dr. Waites' contention-and the trial court's finding-that if the accelerated payments were made, the payments were future advances of the support obligation for which a credit is due. Stated otherwise, she does not contend that Dr. Waites loaned or gifted to her $66,000.00 when she was attending law school. Rather, she contends that Dr. Waites never made any additional payments during her matriculation in law school.

As Dr. Waites points out, Ms. Dickerson likewise failed to introduce any documentary proof that she financed her own law school education, such as a "paid tuition bill, bank statements, [a] student loan statement, or even a student loan interest statement for income tax deductions."

As to the lack of documentary evidence, Dr. Waites explained his search for such evidence. The inability to find it was attributable to the fact that the payments allegedly were made two decades ago-from 1993 to 1996-and the records apparently had been discarded. The passage of time, however, should not deprive a party of his or her right to seek a credit for payments actually made.

Insofar as Ms. Dickerson's contention that Dr. Waites' continuing to pay support payments for seventeen years-from 1996 to 2013-without seeking a credit resulted in a waiver, Dr. Waites' "[m]ere acquiescence" by continuing to pay the full $1,000 a month did not constitute a waiver of the right to claim a credit. See Delesdernier , supra .